TEMPLE–EASTEX INCORPORATED,
Petitioner,

v.

ADDISON BANK, Respondent.

No. C–2861.

Supreme Court of Texas.

June 6, 1984.

Rehearing Denied July 18, 1984.

R.C. Thompson, Diboll, Joseph H. McCracken, Dallas, for petitioner.

Robert L. McCallum, Dallas, for respondent.

McGEE, Justice.

We must determine whether Addison Bank wrongfully dishonored a letter of credit presented to it for payment by Temple-Eastex Incorporated. Trial was before the court on stipulated facts. The trial court rendered judgment in favor of Temple-Eastex, holding that the bank wrongful-ly dishonored the letter of credit. The bank appealed. The court of appeals reversed the judgment of the trial court and rendered judgment that Temple-Eastex take nothing. 665 S.W.2d 550. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

On December 7, 1979, the bank issued a $3,000 irrevocable letter of credit to Woodward, Inc. for the account of DFW Furniture Distributors, Inc. DFW was buying furniture from Woodward for resale. The letter of credit required Woodward to allow DFW thirty days to pay for purchases. Absent payment, Woodward was entitled to make demand on the letter of credit. Such demands were to be accompanied by drafts signed by Woodward and an affidavit from Woodward that the merchandise had been ordered by DFW, delivered and remained unpaid for thirty days. The letter of credit was to expire upon exhaustion of the $3,000, but not later than December 7, 1980. It was silent as to assignability. In March, 1980, DFW ordered $3,280.99 in furniture from Woodward. Of this sum, $1,669.30 became delinquent on April 11; $1,611.79 on April 27. In September, 1980, DFW paid $500 on its account, leaving a delinquent balance of $2,781.09.

Woodward was the wholly-owned subsidiary of Temple-Eastex. On March 26, 1980, Woodward, Temple-Eastex, and Broyhill Furniture Industries, Inc. executed an assignment of Woodward's accounts receivable to Broyhill. At that time the DFW account was not delinquent. The action was apparently in preparation for the voluntary corporate dissolution of Woodward. On April 23, 1980, Woodward was dissolved. Temple-Eastex was the distributee of Woodward's remaining assets, including the letter of credit. On November 26, 1980, Temple-Eastex repurchased the DFW accounts receivable from Broyhill in accordance with the March 26 agreement. On December 2, 1980, Temple-Eastex placed a written demand upon the letter of credit in the United States mail. The demand letter was on Temple-Eastex stationery and was accompanied by an affidavit of

default executed by an officer of Temple-Eastex. Attached to the affidavit was a copy of a June 26, 1980, statement of DFW's account certified by the Woodward credit manager as being delinquent. The demand was received by the bank on Monday, December 8. That same day, the bank sent a letter notice of dishonor to Temple-Eastex claiming only that the demand was untimely. The court of appeals held that the demand was timely and this finding has not been challenged.

In its findings of fact and conclusions of law, the trial court found that the letter of credit was assignable, that Temple-Eastex's "corporate inheritance" of the letter gave it, the beneficiary, power to make demand upon the letter of credit, that the demand was timely, and that it was in compliance with the documentary requirements as interpreted in light of banking and business custom and usage. The trial court awarded Temple-Eastex damages in the amount of $2,781.09, plus pre-judgment interest and attorney's fees of $1,200.

The letter of credit was drawn upon the bank's stationery and read as follows:

> Irrevocable Letter of Credit
> No. 315
> Date: December 7, 1979
> $3,000,00 U.S. Currency

Woodward, Incorporation
P.O. Box 3178
Austin, Texas 78764
Gentlemen:

We hereby establish our Irrevocable Letter of Credit in your favor for the account of DFW Furniture Distributors, Inc., 14809 Venture Drive, Dallas, Texas 75234, up to an aggregate amount of $3,000.00 *available by your sight drafts drawn on us and accompanied by your affidavit that DFW Furniture Distributors, Inc. has defaulted on payment on the net amount of invoice(s)* (after credit is given for merchandise returned) resulting from the purchase of Woodward merchandise ordered by and shipped to DFW Furniture Distributors, Inc. in accordance with all terms and conditions as stated on a DFW Furniture Distributors, Inc. purchase order and confirmed accordingly. They are to be allowed thirty (30) days payment terms prior to funding this Letter of Credit. *Your sight drafts should also be accompanied by copies of commercial invoices showing evidence of shipment of this merchandise to DFW Furniture Distributors, Inc.* Partial drawings against the Letter of Credit are permissible.

This letter shall terminate immediately upon the payment in full to you of an aggregate sum of no more than $3,000.00; however, in any event this Letter shall expire not later than December 7, 1980.

> Sincerely,
> /s/
> R. Stephen Hull
> Vice President

(emphasis added).

The bank would be liable under the letter of credit only if a proper presentment and demand for payment were made. The court of appeals held that the demand by Temple-Eastex was defective because: (1) Temple-Eastex did not comply with the terms of the letter of credit in that its demand letter and accompaning affidavit were not signed by an officer of Woodward; and (2) the demand was not made by presentment of sight drafts. In so holding, the court of appeals followed a rule of strict construction and held that the demand for payment and affidavit by the Temple-Eastex officer were insufficient to require the bank to pay pursuant to its letter of credit.

The Texas cases indicate that the beneficiary of a letter of credit must strictly comply with the conditions of payment before he is entitled to receive payment thereunder. *See Cypress Bank v. Southwestern Bell Telephone Co.,* 610 S.W.2d 185 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (issuer of letter of credit incurs no liability on demands for payment presented after expiration date); *accord Siderius, Inc. v. Wallace Co.,* 583 S.W.2d 852 (Tex.Civ.App.—Tyler 1979, no writ). Furthermore, a "transfer" or "assignment"

of the right to draw under a letter of credit is generally impermissible unless the letter of credit is expressly designated as transferable or assignable. Tex.Bus. & Comm. Code Ann. § 5.116(a) (Tex. UCC) (Vernon 1968).

The bank contends the demand of Temple-Eastex for payment did not meet the conditions of the letter of credit because the demand letter and affidavit were not signed by Woodward. It is undisputed that a Temple-Eastex official executed an affidavit of default. No question has been raised concerning the content of the affidavit or demand letter. The sole question relates to the party making the affidavit.

In response, Temple-Eastex's argument that it was entitled to demand payment under the letter of credit focuses on Temple's rights as the sole shareholder and distributee of the assets of the dissolved Woodward. Temple-Eastex points out that article 6.04 of the Texas Business Corporations Act provides that a dissolving corporation, upon discharging its obligations, "shall then distribute the remainder of its assets ... among its shareholders according to their respective rights and interests." Tex.Bus.Corp. Act Ann. art. 6.04 (Vernon 1980). Temple-Eastex asserts that based upon article 7.12 of the same Act, it had the right, as a shareholder and distributee of Woodward to collect under the letter of credit. Article 7.12 provides in part:

> the dissolution of a corporation ... shall not take away or impair any remedy available to or against ... its ... shareholders, for any right or claim existing ... prior to such dissolution. The *shareholders* ... shall have power to take such *corporate or other action* as shall be appropriate to protect such remedy, right, or claim.

Tex.Bus.Corp.Act Ann. art. 7.12 (Vernon 1980) (emphasis added). Article 7.12 was enacted to remedy the harsh result at common law that a corporation could not sue or be sued subsequent to dissolution. *E.g., Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 549–50 (Tex.1981).

In the instant case, Temple-Eastex, as the sole shareholder of Woodward, had an election to pursue its remedy in the name of the dissolved corporation or in its own name pursuant to article 7.12. It elected to pursue its remedy in its own name. Woodward, Inc. did not "transfer or assign" the letter of credit to a third party as those terms are used in § 5.116(a) of the U.C.C. Instead, Temple-Eastex acquired the letter of credit as a "vertical" distributee upon the dissolution of its subsidiary. Therefore, provided that Temple-Eastex complied with the other prerequisites of a proper demand, it should be able to collect under the letter of credit.

Article 7.12 establishes the right of Temple-Eastex to demand payment under the letter of credit, but did Temple-Eastex inform Addison Bank of this right? First, the Temple-Eastex demand letter identified Temple-Eastex as the parent company of Woodward. An examination of Woodward's statement, invoices, and shipping documents which accompanied the demand letter show that, without exception, when the name "Woodward, Inc." appears, the words "subsidiary of Temple-Eastex Incorporated" appear immediately below. Further, the demand letter pointed out the parent company had sold assets of its subsidiary, including accounts receivable, to Broyhill Furniture Industries, Inc., and subsequently repurchased outstanding accounts receivable in accordance with the terms of the sale. These circumstances should have made the bank aware that the subsidiary, Woodward, was no longer in existence and that the parent company, Temple-Eastex, had succeeded to whatever rights Woodward, Inc. had. These circumstances would put the bank on inquiry as to the status and rights of Temple-Eastex.

Section 3.505 of the Texas Business and Commerce Code applies to letters of credit. It provides in pertinent part:

> § 3.505. Rights of Party to Whom Presentment Is Made
>
> (a) The party to whom presentment is made may without dishonor require
>
> \* \* \* \* \* \*

(2) reasonable identification of the person making presentment and evidence of his authority to make it if made for another.

Tex.Bus. & Comm.Code Ann. § 3.505(a)(2) (Tex.UCC) (Vernon 1968). If Addison Bank had been in doubt, it could have required evidence of Temple-Eastex's authority to make presentment of the letter of credit. Had it done so, Temple-Eastex would then have had a reasonable time in which to comply. Tex.Bus. & Comm.Code Ann. § 3.505(b) (Tex.UCC) (Vernon 1968). As shown by the record, Addison Bank made no such inquiry. It simply dishonored the letter of credit based upon the unmeritorious claim that presentment was untimely.

 The bank next argues that the demand for payment by Temple-Eastex did not meet the conditions of the letter of credit because Temple-Eastex's request for payment was not in the form of a draft. In other words, the bank claims the letter of credit made the *form* of Temple-Eastex's demand for payment a *condition* of the bank's liability on the credit. This contention is without merit. The letter of credit required the beneficiary to present "sight drafts" to obtain payment thereunder; however, the bank failed to define the term "sight draft." A "sight" draft is a draft which is payable on demand. *See* J. White & R. Summers, *Uniform Commercial Code* § 18–1 at 601–02 (1972). Chapter 5 of the Uniform Commercial Code governs letters of credit but does not set forth the definition of "draft." Section 5.103(7)(c) refers to section 3.104 of the U.C.C. which defines a "negotiable instrument" to include drafts. Section 3.104(c) also states:

> As used in other chapters of this title, and *as the context may require*, the terms "draft" ... may refer to instruments which are not negotiable within this chapter as well as to instruments which are so negotiable.

Tex.Bus. & Comm.Code Ann. § 3.104(c) (Tex.UCC) (Vernon 1968). Therefore, when looking at the U.C.C., the term "draft" does not embrace only one definition. Instead, depending on the context of its use and the applicable section governing the commercial transaction, the term "draft" is capable of dual interpretations.

In the recent case of *Travis Bank & Trust v. State*, 660 S.W.2d 851 (Tex.App.—Austin 1983, no writ), the court addressed the issue of what constitutes a "draft" in the context of a letter of credit. In *Travis*, the court held that a letter of credit which did not define the term "draft" authorized the beneficiary to receive payment upon presentment of a letter which merely demanded payment. The court stated:

> What meaning shall we then assign to the word 'draft' as it is used in the letters of credit? While comprehensive, the word is not ambiguous and has a well-understood meaning. The word 'draft' is a common synonym for 'bill of exchange' .... In the law merchant, the term 'bill of exchange' was defined merely as a requirement or request in writing for the payment of a specified sum of money to a third person or the drawer himself, at a stated time, absolutely and at all events, directed by the drawer of the writing to the one of whom payment was required.... The word 'draft,' standing alone, implies neither the attribute of negotiability nor its absence....
>
> The absence in the letters of credit of any requirement of negotiability suggests that negotiability of the draft was unimportant to the parties.

*Id.* at 854–55. The court held that the letter of credit issued by the bank permitted the beneficiary of the letter to draw upon the credit by means of the beneficiary's demand letter.

Likewise, the issue of wrongful dishonor under a letter of credit was addressed by the court in *Insurance Company of North America v. Cypress Bank*, 663 S.W.2d 122 (Tex.App.—Houston [1st Dist.] 1983, no writ). In *Cypress*, the court was faced with the interpretation of a letter of credit that required presentment of "drafts drawn at sight" by the beneficiary. The court held:

> The parties stipulated that after receipt of notice of appellee's [the bank's]

election not to renew the letter of credit the appellant [beneficiary] sent the appellee [bank] *a letter* stating that it had not received satisfactory evidence of the principal's obligations on the bond. *Reasonable minds must conclude that this notice satisfied the language of the letter of credit and entitled the appellants to draw. . . .*

*Id.* at 125 (emphasis added). We find the reasoning of these courts to be persuasive.

■ We have found no prohibition against including a provision in a letter of credit that specifically sets out the precise form of any demand for payment made on the credit, along with an express provision that makes demand in the specified form a condition of the issuer's obligation to pay. Here, the letter of credit did not impose a condition of that nature upon the bank's obligation to pay. Although no particular words are required for the existence of a condition, terms such as "if," "provided that," "on condition that," or some other phrase that conditions performance usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, as opposed to a promise, must be gathered from the contract as a whole and from the intent of the parties. *Hohenberg Brothers v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976).

■ Letters of credit are governed by the construction rules of ordinary contracts. *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109, 115 (Tex.1979). In Texas, a writing is generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties. If two constructions are possible, a construction rendering the contract possible of performance will be preferred to one that renders its performance impossible or meaningless. *Id.* at 115. As a result, the bank's letter of credit is construed most strictly against the bank because it drafted the letter of credit. Moreover, the trial court found that the "custom and usage" in the banking industry was such that the Temple-Eastex demand letter and accompanying documents satisfied the requirements of the bank's letter of credit.

■ We hold the demand for payment and accompanying documents sent to the bank constituted "drafts" as that term was contemplated by the parties and as that term is usually interpreted when used in letters of credit. Temple-Eastex is entitled to attorney's fees pursuant to article 2226 of the Texas statutes which allows recovery of attorney's fees in suits founded on written contracts. As recognized by this court in *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.1979), letters of credit involve a contract between the bank and the beneficiary.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.