**COBB RESTAURANTS, L.L.C. and Phillip E. Cobb, Appellants**

v.

**TEXAS CAPITAL BANK, N.A., Appellee.**

No.  05–04–01068–CV.

Court of Appeals of Texas, Dallas.

Aug. 2, 2006.

Rehearing Overruled Oct. 3, 2006.

Jeffrey Cook, Jason Ankele, Sullivan & Cook, LLC, Dallas, TX, for appellants.

R. Alan York, Godwin Pappas Langley Ronquillo, LLP, Houston, TX, for appellee.

Before Justices WHITTINGTON, MOSELEY, and LANG–MIERS.

## OPINION

Opinion by Justice MOSELEY.

In this appeal, we determine whether a bank properly paid a letter of credit. Cobb Restaurants, L.L.C. and Phillip E. Cobb (Cobb) obtained a letter of credit from Texas Capital Bank, N.A. payable to 2100 McKinney Land Development, L.P. (McKinney Land) to secure Cobb's performance under a lease. Cobb sued Bank for wrongful payment of the letter of credit claiming the presentations were not made by the named beneficiary and were not timely. Bank counterclaimed for breach of the loan agreements and guaranty securing the letter of credit. The trial court granted summary judgment in favor of Bank on Cobb's claims and on Bank's counterclaim. Cobb appeals. In three issues, Cobb argues the trial court erred in granting summary judgment for Bank because (1) the evidence shows the first two presentations on the letter of credit were not made by the beneficiary and the third presentation was not timely; (2) the evidence raises a fact issue on Cobb's claims for wrongful payment; and (3) the trial court erred in rendering a summary judgment declaring Bank's foreclosure was authorized. We reverse the trial court's summary judgment and remand for further proceedings.

## Factual Background

Cobb entered into a commercial lease agreement with McKinney Land to operate a restaurant. The lease required Cobb to obtain a letter of credit for the benefit of McKinney Land to secure Cobb's obligations. Cobb obtained the letter of credit from Bank and signed a loan agreement and guaranty to secure payment of the letter of credit. The letter of credit was later amended to extend the expiration date to April 29, 2002 and reduce the amount to $375,000. This amendment did not change the beneficiary of the credit. The letter of credit provided in part:

> Funds hereunder are available to Beneficiary against presentation to the Bank at the Bank's office ... of Beneficiary's sight draft(s) drawn on us and accompanied by the signed statement of (i) any person who is or purports to be a duly Authorized Representative (hereafter defined) of the Beneficiary, stating that (x) an Event of Default has occurred and remains uncured under that certain Lease dated April 23, 1999 between Beneficiary and Applicant or (y) less than twenty-five (25) days remain prior to April 29, 2001, and Applicant has failed to renew or replace the same with

a letter of credit in form, substance and amount required by the terms of the Lease.

Shortly before the letter of credit expired, another entity, 2100 McKinney Office L.P. (McKinney Office) attempted to draw on the letter of credit as a "successor-in-interest" to McKinney Land. The presentation documents included: (1) a letter on McKinney Office letterhead signed on behalf of McKinney Office stating that less than twenty-five days remained before the expiration date of the letter of credit and that Cobb had failed to renew or replace the letter of credit as required by the lease; (2) a sight draft signed by McKinney Office payable to the order of McKinney Office "successor-in-interest" to McKinney Land; (3) two "bill of sale, assignment and assumption" agreements to McKinney Office; (4) the original letter of credit; and (5) the original amendment to the letter of credit. In one bill of sale, McKinney Land sold, transferred, assigned and conveyed to McKinney Office all tangible and intangible personal property, tenant leases, and contracts related to certain real property where Cobb's restaurant was located. (The other bill of sale assigned similar property related to a different tract of real property from another entity, 2100 McKinney, L.P., to McKinney Office.) Bank rejected the first presentation because the statement regarding the expiration date of the letter of credit did not follow the exact language of the letter of credit.

The next day, Friday April 26, 2002, McKinney Office made a second presentation substituting a new letter in the same form as the first presentation except that the language was modified to match the terms of the letter of credit that "less than twenty five (25) days remain prior to April 29, 2001." Cobb was notified of the attempt to draw on the letter of credit and objected to the presentation as an improper attempt to transfer the letter of credit to McKinney Office. Bank advised McKinney Office of the objection, but did not reject the second presentation.

On Monday, April 29, 2002, a third presentation was submitted to Bank, this time signed by a representative of McKinney Land (the named beneficiary) with a sight draft signed by McKinney Land. Bank paid the letter of credit on May 2, 2002 and later demanded reimbursement from Cobb. Bank also gave notice to Cobb of its intent to foreclose on the real property securing the letter of credit.

Cobb filed this lawsuit against Bank alleging wrongful payment of the letter of credit and seeking to enjoin the foreclosure. Bank filed a counterclaim for reimbursement under the loan agreement and guaranty securing the letter of credit and for a declaration that it was entitled to foreclose on the real property. Bank filed traditional and no-evidence motions for summary judgment on Cobb's claims and on its counterclaim. Bank conceded there was a question of fact as to whether the third presentation was timely under the deadline in the letter of credit as amended. The motions for summary judgment were based on the second presentation. The trial court granted Bank's motions for summary judgment and, after dismissals of other parties, entered a final judgment in favor of Bank.

## Discussion

We apply the traditional summary judgment standards of review. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985) (summary judgment standards of review); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003) (no-evidence summary judgment standards of review).

A letter of credit is an instrument obligating the issuer (usually a bank), at the request of its customer, to pay money to a beneficiary upon presentation of documents strictly complying with the terms of the letter of credit. *Westwind Exploration, Inc. v. Homestate Savings Ass'n*, 696 S.W.2d 378, 380–81 (Tex. 1985); *SAVA Gumarska in Kemijska Industria d.d. v. Advanced Polymer Sciences, Inc.*, 128 S.W.3d 304, 318–19 (Tex. App.-Dallas 2004, no pet.). It is the last of three related but separate contracts: the underlying contract between the customer and the beneficiary; the contract between the issuer and the customer; and the letter of credit contract between the issuer and the beneficiary. *See Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 112 (Tex.1979). The essential purpose of the letter of credit is to insure payment to the beneficiary on presentation of conforming documents independent of any underlying contract dispute between the beneficiary and the customer. *GATX Leasing Corp. v. DBM Drilling Corp.*, 657 S.W.2d 178, 181 (Tex.App.-San Antonio 1983, no writ). Proper presentation under a letter of credit occurs when the beneficiary strictly complies with the terms of the letter. *Temple–Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 795 (Tex.1984). Furthermore, the right to draw on a letter of credit may not be transferred or assigned unless the letter of credit is expressly designated as transferable or assignable. Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, sec. 5.116(a), 1967 Tex. Gen. Laws 2343, 2469–70 (amended 1999) (current version at TEX. BUS. & COM.CODE ANN. § 5.112 (Vernon 2002));[1] *Temple–Eastex*, 672 S.W.2d at 795–96.

Cobb contends the summary judgment evidence does not show that the beneficiary strictly complied with the terms of the letter of credit. Because the letter of credit was not assignable and the first and second presentations were not made by the named beneficiary in the letter of credit, Bank's payment on either presentation was wrongful. Bank argues, however, that the rule against assignment of the letter of credit does not apply to a "successor beneficiary" that acquires the letter of credit "by operation of law." *See Temple–Eastex*, 672 S.W.2d at 796. Bank contends McKinney Office came within the narrow exception recognized in *Temple–Eastex*.

In *Temple–Eastex*, the parent company of the beneficiary was permitted to draw on a letter of credit in its own name because it acquired the letter of credit as a "vertical distributee" on dissolution of its wholly-owned subsidiary. 672 S.W.2d at 796. Woodward, Inc. was the wholly-owned subsidiary of Temple–Eastex and beneficiary under a letter of credit. The letter of credit was silent as to assignability. *Id.* at 794. After Woodward voluntarily dissolved, Temple–Eastex, in its own name, presented documents to draw on the letter of credit, but the bank refused to honor the presentation. The supreme court noted that under the corporation laws in effect, the assets of a dissolved corporation were distributed to its shareholders after satisfying its creditors. *Id.* at 796 (discussing former TEX. BUS. CORP. ACT ANN. art. 6.04). The corporation laws also gave the shareholders of a dissolved corporation the power and right to take corporate or other action as necessary to protect any remedy, right, or claim the corporation had before dissolution. *Id.* (discussing former TEX. BUS. CORP. ACT ANN.

---

1. The letter of credit was issued prior to the effective date of current article five of the U.C.C. and is governed by the prior law. *See*

TEX. BUS. & COM.CODE ANN. § 5.101 (Vernon 2002).

art. 7.12).[2] The supreme court concluded that the letter of credit was not assigned to a third party, but that Temple–Eastex "acquired the letter of credit as a 'vertical' distributee upon the dissolution of its subsidiary." *Id.* The court concluded that article 7.12 established the right of Temple–Eastex to demand payment under the letter of credit.[3] Because the presentation documents gave the bank sufficient notice of these facts, the bank wrongfully dishonored the presentation. *Id.* at 796–97.

Bank argues the second presentation strictly complied with the terms of the letter of credit. However, on its face, the second presentation was not made by the beneficiary named in the letter of credit. Therefore, under the *Temple–Eastex* holding, payment was proper only if McKinney Office was a successor beneficiary of McKinney Land by operation of law.[4]

The summary judgment evidence includes the bill of sale to McKinney Office and a special warranty deed from McKinney Land to McKinney Office of the real property where the restaurant was located dated the same date. About two months after the bill of sale and special warranty deed, McKinney Land filed a certificate of cancellation with the secretary of state. Bank argues that based on the bill of sale to McKinney Office, the special warranty deed to McKinney Office, and the certificate of cancellation, McKinney Land dissolved and pursuant to former article 7.12 of the business corporation act, McKinney Office stepped into the shoes of McKinney Land. *See Temple–Eastex,* 672 S.W.2d at 796 (discussing pre–1987 version of TEX. BUS. CORP. ACT ANN. art. 7.12). We disagree. First, the business corporation act has no application to the foreign limited partnerships at issue in this case.

Second, under *Temple–Eastex,* a "vertical distributee" is an entity that receives the assets of a beneficiary on dissolution and thus becomes a successor beneficiary by operation of law. *Temple–Eastex,* 672 S.W.2d at 795–96. In the case of a limited partnership, a vertical distributee would be a partner entitled to a distribution on dissolution of the limited partnership. *See* TEX. BUS. ORGS.CODE ANN. § 153.504 (Vernon Pamph.2005) (formerly TEX.REV.CIV. STAT. ANN. art. 6132a–1 § 8.05).[5] Thus, a general or limited partner of McKinney Land might qualify as a vertical distributee—and successor beneficiary—of McKin-

**2.** The version of article 7.12 in effect when *Temple–Eastex* was decided permitted the shareholders of a dissolved corporation the power to "take such corporate or other action as shall be appropriate to protect" any remedy, right, or claim the corporation had before dissolution. *See Temple–Eastex,* 672 S.W.2d at 796. This language was removed in the 1987 amendments to article 7.12. *See* Act of April 30, 1987, 70th Leg., R.S., ch. 93, § 31, 1987 Tex. Gen. Laws 203, 223 (amended 2003) (current version at TEX. BUS. ORGS. CODE ANN. § 11.356–.359 (Vernon Pamph.2005)).

**3.** Current sections 5.102(a)(15) and 5.113 contain similar principles regarding successor beneficiaries by operation of law. *See* TEX. BUS. & COM.CODE ANN. §§ 5.102(a)(15), 5.113 (defining and establishing rules relating to successor beneficiaries).

**4.** The letter of credit in this case provides a procedure for Bank to transfer the letter of credit under certain circumstances. The parties agree this procedure was not followed in this case and that the letter of credit was not transferred under its terms.

**5.** The parties do not argue that the laws of Delaware are different from Texas on this issue; therefore we assume Texas law is the same as the law of the state under which the limited partnerships were formed. *See* TEX. BUS. ORGS. CODE ANN. § 1.102; *Keene Corp. v. Gardner,* 837 S.W.2d 224, 227 (Tex.App.-Dallas 1992, writ den.). Additionally, the record does not show the limited partnership agreement for McKinney Land provided for a different distribution on dissolution. *See* TEX. BUS. ORGS. CODE ANN. § 153.504.

ney Land's assets. However, the summary judgment proof does not show that McKinney Office, the entity making the presentation, was a partner in McKinney Land. Rather, the record indicates that McKinney Land and McKinney Office were separate Delaware limited partnerships with different general partners. Although there is summary judgment evidence that McKinney Office and McKinney Land had the same limited partner and that the limited partner was the sole member of their respective general partners, there is no evidence that McKinney Office was a partner in McKinney Land.

McKinney Office's claim to be the "successor-in-interest" of McKinney Land would have put Bank on inquiry as to the status and rights of McKinney Office to the letter of credit. *See Temple–Eastex,* 672 S.W.2d at 796 (concluding circumstances put bank on inquiry as to status and rights of Temple–Eastex). In contrast to *Temple–Eastex,* however, the documents submitted to Bank, particularly the bill of sale, indicated that McKinney Land had voluntarily transferred or assigned assets to McKinney Office, apparently a third party. (The letter of credit is not specifically identified in the assets described in the bill of sale.) Such a transfer was not in the manner authorized by the letter of credit. At best, the documents presented to Bank gave some indication that through a complex series of limited liability companies, McKinney Land and McKinney Office may have had similar ownership. But inquiry would have shown that McKinney Office was neither a general nor limited partner of McKinney Land and would not normally be entitled to distribution of McKinney Land's assets on dissolution.

The record shows there was no "vertical" relationship between McKinney Office and McKinney Land as there was in *Tem-ple–Eastex.* Rather, the relationship was horizontal in that they shared the same limited partner, but had different general partners. Thus, the record does not establish that McKinney Office was an entity that would succeed to the rights of McKinney Land upon its dissolution.

■ Bank also argues the letter of credit allowed presentation by an authorized representative of the beneficiary. The language of the letter of credit, however, states that funds are available *to the Beneficiary* against presentation of the *Beneficiary's* sight draft and a signed statement of anyone who is or purports to be a duly authorized representative of the Beneficiary, stating one of two things. Thus, the authorized representative is permitted to make either of the two statements required by the letter of credit; it is not entitled to make a presentation in its own name under its own sight draft.

Bank failed to prove as a matter of law that McKinney Office was a successor beneficiary by operation of law entitled to draw on the letter of credit. Accordingly, summary judgment for Bank was improper. We sustain Cobb's first issue. We need not address Cobb's remaining issues.

We reverse the trial court's final judgment and remand the case for further proceedings.