

# NUMBER 13-20-00332-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TAYLOR MORRISON OF TEXAS,
INC. AND TAYLOR WOODROW
COMMUNITIES-LEAGUE CITY, LTD.,                              Appellants,

v.

MICHAEL FULCHER AND
LISA FULCHER,                                              Appellees.

## On appeal from the 10th District Court
of Galveston County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Hinojosa**

This is an appeal from a judgment entering an arbitration award. By two issues,

appellants Taylor Morrison of Texas and Taylor Woodrow Communities—League City,

Ltd. (collectively, Taylor Morrison) contend that the trial court erred by: (1) denying vacatur of the final arbitration award and confirming the final arbitration award and (2) awarding post-judgment interest on appellees' conditional attorneys' fees at the time of its judgment. We affirm in part, and reverse and remand in part.

## I.   BACKGROUND[1]

In 2015, appellees Michael and Lisa Fulcher signed a Purchase Agreement with Taylor Morrison to construct their new home in League City, Texas. The Purchase Agreement included an arbitration clause which provided that:

> Any and all claims, controversies, breaches or disputes by or between the parties hereto, arising out of or related to this purchase agreement, the property, the subdivision[,] or community of which the property is a part . . . whether such dispute is based on contract, tort, statute, or equity . . . shall be arbitrated pursuant to the Federal Arbitration Act [(FAA)].

The arbitration clause also included the following provisions:

> (e)   In the event any dispute arises under the terms of this Purchase Agreement or in the event of the bringing of any arbitration action by a party hereto against another party . . . then all fees and costs shall be borne separately between the parties, including but not limited to all attorneys' fees and expert witness costs resulting from the Dispute . . . .

> (f)   The arbitrator shall be authorized to provide all recognized remedies available in law or in equity for any cause of action that is the basis of the arbitration.

On December 29, 2017, the Fulchers filed suit against Taylor Morrison, alleging their home had a "severe, pervasive mold infestation caused by construction defects."

---

[1] This case is before this Court on transfer from the Fourteenth Court of Appeals in Houston pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

The Fulchers asserted breach of contract, Deceptive Trade Practices Act (DTPA), breach of implied warranties, and negligent construction causes of action. The Fulchers also sought economic damages and attorney's fees under chapter 27 of the property code (the Residential Construction Liability Act (RCLA)), chapter 38 of the civil practice and remedies code (attorney's fees), chapter 17 of the business and commerce code (DTPA), and common law in their petition. Taylor Morrison filed an original answer and verified denial on January 29, 2018, and filed a plea in abatement and motion to compel binding arbitration on April 26, 2018.

The parties went to arbitration. After a four-day hearing which included eyewitness testimony and the admission of evidence, the arbitrator issued a $517,098.01 award to the Fulchers.[2] The arbitrator set forth that his award of $166,104.58 in attorney's fees, plus a conditional award of $100,000 should the matter be appealed to the court of appeals and appellees prevail, and an additional $25,000 should the matter be appealed to the Texas Supreme Court and appellees prevail again, was based on guidance from

---

[2] The total award included the following:

1. Mold Remediation: $69,983.10
2. Build Back of Structure: $159,530.63
3. Cost to Remedy Heating, Ventilation, and Air Conditioning Defects: $12,000.00
4. Content Replacement: $4,920.00
5. Alternative Living Arrangements: $16,800.00
6. Expert Fees: $32,968.86
7. Reasonable and Necessary Attorney Fees: $166,104.58, plus a conditional award of $100,000 should the matter be appealed to the Court of Appeals and appellees prevail, and an additional $25,000 should the matter be appealed to the Texas Supreme Court and appellees prevail again.
8. Court Costs: $5,550.29
9. Pre-Judgment Interest: $24,913.36
10. Arbitration Fees: $24,327.19

*D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The arbitrator also granted $32,968.86 in expert witness fees and $24,327.19 in arbitration fees.

In explaining the award of attorney's fees, the arbitrator noted that, under the Purchase Agreement, he was "authorized to provide all recognized remedies available in law or in equity for any cause of action that is the basis of arbitration." He explained:

> It is true that the Texas Supreme Court has stated that "[i]mplied warranties are created by operation of law and are grounded more in tort than in contract." *JCW Electronics, Inc. v. Garza*, 257 S.W.3d 701, 704 (Tex. 2008) (citing *La Sara Grain* Co. *v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984) and other earlier decisions for this proposition). However, the court explained in *JCW Electronics* that "[c]onceptually, the breach of an implied warranty can either be in contract or in tort depending on the circumstances." *Id.* As the court explained, "[t]he precise nature of the claim is ordinarily identified by examining the damages alleged: when the damages are purely economic, the claim sounds in contract, but a breach of implied warranty claim alleging damages for death or personal injury sounds in tort." *Id.* at 705 (citations omitted). Here, the Claimants['] damages are economic. Thus, the [attorney's fee] claim sounds in contract.

The Fulchers filed an application to confirm the arbitration award by entry of judgment on January 8, 2020. Taylor Morrison, in response, filed a motion to vacate arbitration award and its objections to entry of the proposed final judgment on February 13, 2020. Taylor Morrison argued that the arbitrator exceeded his powers because his award contained "monetary awards to [the Fulchers] for their fees and costs, including attorney's fees, expert witness costs, court costs, and arbitration fees" which were outside the bounds of the arbitration agreement. Taylor Morrison specifically referred to language from the Purchase Agreement which stated that "all fees and costs shall be borne separately between the parties, including but not limited to all attorneys' fees and expert

4

witness costs resulting from the Dispute." Taylor Morrison requested the following relief in the alternative: (1) denial of the Fulchers' request to confirm the arbitration award; (2) to vacate the entire award as unenforceable because the arbitrator exceeded his powers; (3) to vacate those portions of the award which exceeded the Purchase Agreement (attorney's fees and expert fees); (4) to order a rehearing before a new arbitrator who would abide by the arbitration limitations; (5) to sustain its objections to the arbitrator's award; and/or (6) to delay entry of final judgment to allow further hearing to determine the appropriate amount of a supersedeas bond so that Taylor Morrison could appeal.

The trial court summarily denied Taylor Morrison's requests and adopted the arbitrator's complete award in its final judgment. The trial court also added the following language to its final judgment: "[p]ost-judgment interest on any conditional awards that vest subsequent to [the] entry of this judgment at the rate of five percent (5%) per annum." Taylor Morrison appeals.

## II. SCOPE OF ARBITRATOR'S AUTHORITY

By its first issue, Taylor Morrison contends the trial court erred when it denied vacatur of the final arbitration award and instead confirmed the arbitrator's award in its judgment. Taylor Morrison contends that "the [a]rbitrator exceeded his powers and dispensed his own idea of justice" by awarding attorney's fees through arbitration ($166,104.58), conditional attorney's fees, expert witness costs ($32,968.86), and arbitration fees ($24,327.19).

### A. Standard of Review and Applicable Law

"We review de novo a trial court's decision to confirm or vacate an arbitration

5

award." *Bernhard*, 423 S.W.3d at 534 (citing *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 844 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)). "Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." *E. Tex. Salt Water Disposal Co., Inc. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). Therefore, an arbitrator's award "upon matters submitted to them is given the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it." *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (quoting *City of San Antonio v. McKenzie Const. Co.*, 150 S.W.2d 989, 996 (Tex. 1941)).

The FAA requires a court to confirm an arbitration award unless the award is "vacated, modified, or corrected as prescribed in sections 10 and 11" of the act. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 91 n.30 (Tex. 2011); *Guillen-Chavez v. ReadyOne Indus., Inc.*, 588 S.W.3d 281, 286 (Tex. App.—El Paso 2019, pet. denied). Under the FAA, a court may only vacate an arbitration award under four circumstances:

(1)     where the award was procured by corruption, fraud, or undue means;

(2)     where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10(a).

6

Pertinent here is the applicability of §10(a)(4), "which requires vacatur when arbitrators exceed their authority." *Nafta Traders*, 339 S.W.3d at 93.

An arbitrator exceeds his authority when he disregards the contract and dispenses his own idea of justice. *See Townes Telecomms., Inc. v. Travis, Wolff & Co.*, 291 S.W.3d 490, 494 (Tex. App.—Dallas 2009, pet. denied); *see generally Nafta Traders*, 339 S.W.3d at 95. However, "an arbitrator does not exceed her authority by committing a mistake of law, but instead by deciding a matter not properly before her." *Bernhard*, 423 S.W.3d at 534 (citing *LeFoumba v. Legend Classic Homes, Ltd.*, No. 14-08-00243-CV, 2009 WL 3109875, at *3 (Tex. App.—Houston [14th Dist.] Sept. 17, 2009, no pet.) (mem. op.)); *see also Vargas v. Rigid Glob. Buildings, LLC*, No. 14-20-00309-CV, __ S.W.3d __, __, 2022 WL 2311620, at *4 (Tex. App.—Houston [14th Dist.] June 28, 2022, no pet. h.) (mem. op.) ("Arbitrators exceed their power when they decide a matter not properly before them."). "Thus, the appropriate inquiry is not whether the arbitrator decided an issue *correctly*, but instead whether [the arbitrator] had the authority to decide the issue *at all*." *Id*. (emphasis in original). This is because the bedrock principle that underscores the appellate review of arbitration decisions is that "[a]rbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (quoting *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299 n.6 (2010)). "[A]rbitrators wield only the authority they are given," and "they derive their 'powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.'" *Id.* at 1416 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). Whatever agreement is ultimately formed, "the task for courts and arbitrators at bottom

7

remains the same: 'to give effect to the intent of the parties.'" *Id.*; *Stolt-Nielsen*, 559 U.S. at 684 ("It falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of [arbitration].").

"To determine the parties' intent, we examine the express language of their agreement." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014).

Texas courts utilize the "essence test" in connection with whether an arbitrator has exceeded his grounds for authority. *See Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 413 (Tex. App.—Dallas 2007, no pet.); *see also JJ-CC, Ltd. v. Transwestern Pipeline Co.*, No. 14-96-1103-CV, 1998 WL 788804, at *4 (Tex. App.—Houston [14th Dist.] Nov. 12, 1998, no pet.) (mem. op.) (holding that the arbitrator's award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the [agreement]" (cleaned up)). Under the "essence test," we inquire as to whether the basis for the award "is rationally inferable" from the parties' arbitration agreement. *See Myer*, 232 S.W.3d at 413; *see also Vargas*, 2022 WL 2311620, at *4 (holding that "[a]rbitrators do not exceed their powers if the arbitration award has a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the arbitration agreement").

**B.    Analysis**

**1.  Attorney's Fees**

In his final arbitration award,[3] the arbitrator in the Fulchers' case explained that *D.R. Horton–Texas, Ltd. v. Bernhard* authorized his award of attorney's fees. 423 S.W.3d at 534. In *Bernhard*, William and Nadia Bernhard filed suit against D.R. Horton–Texas for

---

[3] The arbitrator issued a fourteen-page "Final Award" summarizing the four-day arbitration hearing, including procedural history, key issues, expert witness testimony, damages, and legal defenses.

alleged construction defects of their residential home. *Id.* at 533. The Bernhards' sales contract included an arbitration agreement with the following provision: "Each party shall bear the fees and expenses or [sic] counsel, witnesses and employees of such party, and any other costs and expenses incurred for the benefit of such party." *Id.*

The parties submitted to arbitration, and the Bernhard arbitrator ultimately granted a damages award of $114,477.45, which included $31,027.93 in attorney's fees. *Id.* The Bernhard arbitrator concluded that the attorney's fees were "economic damages" under one of the Bernhards' pleaded causes of action—the RCLA. *Id.* at 535; *see* TEX. PROP. CODE ANN. § 27.004(g)(6) (allowing a claimant to recover "reasonable and necessary attorney's fees" as economic damages in a residential construction defect case). The arbitrator noted that "[t]he Contract does not limit or expand the damages recovery rights provided for by Chapter 27," and therefore that this award was not precluded by the arbitration agreement's specific provision on attorney's fees. *Bernhard*, 423 S.W.3d at 535. "When D.R. Horton objected to the award of attorney's fees, the arbitrator again explained, 'The separate provision in the Contract for each party to bear its own attorney fees necessarily, then, is qualified in terms of a Chapter 27 recovery.'" *Id.* Our sister court agreed, concluding that the arbitrator's imposition of attorney's fees was proper because the arbitration agreement did not "specifically prohibit an arbitrator from awarding attorney's fees as damages in accordance with the RCLA," and instead, the agreement "merely states that each party 'shall bear the fees and expenses o[f] counsel.'" *Id.*

Taylor Morrison urges us to reject application of *Bernhard*. Taylor Morrison instead requests that we consider *Mitchell v. D.R. Horton-Emerald, Ltd.* for guidance. 579 S.W.3d

9

135, 136 (Tex. App.—Houston [1st] 2019, pet. denied). In *Mitchell*, Daniel and Trisha Mitchell sued their contractor, D.R. Horton, over defects in their new home's foundation. *Id.* Before trial, the parties entered into a partial settlement agreement whereby D.R. Horton agreed to pay $60,000 in damages arising from the alleged defect but submitted the issue of attorney and expert fees to a bench trial. *Id.* at 136–37. "The trial court ruled that the Mitchells were not entitled to recover attorney and expert fees as a matter of law because the [RCLA] is not an independent basis for the recovery of such fees." *Id.* at 137. The First Court of Appeals affirmed, holding that § 27.004 of the RCLA "does not permit a plaintiff to recover attorney or expert fees in the absence of an underlying cause of action providing for the recovery of such fees." *Id.* at 140.

We note that *Mitchell* addressed and distinguished *Bernhard* in its analysis. *See id.* at 139–40. First, in *Mitchell*, the homeowners asserted RCLA as their sole cause of action. Here, the Fulchers also pleaded breach of warranty—a claim that the arbitrator based the award upon. *Cf. Mitchell*, 579 S.W.3d at 139–40; *see generally* TEX. PROP. CODE ANN. § 27.002 ("This chapter applies to . . . any action to recover damages or other relief arising from a construction defect, except a claim for personal injury, survival, or wrongful death or for damage to goods."); *Vision 20/20, Ltd. v. Cameron Builders, Inc.*, 525 S.W.3d 854, 856 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("The RCLA modifies claims for damages resulting from construction defects in residences by limiting and controlling causes of action that otherwise exist. . . . The RCLA does not create a cause of action but provides defenses and limitations on damages.") (internal citations omitted).

10

Second, the *Mitchell* Court held that the issue on appeal in *Bernhard* "was not whether the arbitrator's award was *correct*, but whether the arbitrator had authority to make the award *at all*." *Id.* at 139. It noted that the *Bernhard* Court held "that the arbitrator did have authority to make the award while expressly declining to opine on whether the arbitrator had correctly applied the [RCLA] to the facts of the case." *Id.*

Because this is a transfer case from Houston's Fourteenth Court of Appeals, we are required to apply the precedent of the transferring court. *See* TEX. R. APP. P. 41.3. Texas Rule of Appellate Procedure 41.3 provides that:

> In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis . . . .

*Id*. Consequently, we are bound by *Bernhard*, an opinion from the Fourteenth Court of Appeals dealing with residential construction defect allegations and the analogous legal issue concerning the confirmation of attorney's fees where the arbitration agreement addresses the same. 423 S.W.3d at 534. Considering this binding precedent, we conclude the Fulchers' arbitrator did not exceed the scope of his authority when he awarded attorney's fees as part of the Fulchers' damages. *See id.*

Like the *Bernhard* Court, though, we "pass no judgment on whether the arbitrator made a correct decision under the law and facts of this case" but recognize that "the arbitrator consulted the contractual provisions and statutes regarding attorney's fees when reaching his conclusion." *See* 423 S.W.3d at 535. Similarly, we make no judgment regarding whether the award of conditional appellate attorney's fees was correct or even reasonable under the law. *See id*. Following *Bernhard*, as we must, we only acknowledge

11

that it was within the arbitrator's authority to make such an award because the basis for the attorney's fee award is "rationally inferable" from the parties' arbitration agreement as the agreement provides that "[t]he arbitrator shall be authorized to provide all recognized remedies available in law or in equity for any cause of action that is the basis of the arbitration." *See Myer*, 232 S.W.3d at 413.

Taylor Morrison also argues that "[t]he [a]rbitrator's disregard of the parties' chosen arbitration procedures was not just a legal error, but a decision to exceed his powers to impair obligations of contract in violation of the "Contracts Clause" of the U.S. Constitution and the Texas Constitution." *See* U.S. CONST., art. I, § 10; TEX. CONST. art. 1, § 16. Given that the arbitrator relied on language from a form contract Taylor Morrison drafted, though, we find this argument unpersuasive. *See generally Temple-Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984) ("In Texas, a writing is generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties.").

Taylor Morrison further contends that the arbitrator improperly relied on the Texas Arbitration Act (TAA) instead of the FAA to award attorney's fees, in violation of the parties' chosen arbitration procedures. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.001–.098. However, the arbitrator made clear that the Purchase Agreement was governed by the FAA and proceeded under the same, holding that "the FAA is silent regarding the award of attorneys' fees and expenses" and "[a]s such, neither the TAA, nor other Texas statutory or common law[,] may be said to be . . . different or inconsistent in this regard."

We conclude the trial court did not err when it confirmed the arbitrator's award of

attorney's fees. *See Bernhard*, 423 S.W.3d at 534; *Amoco D.T. Co.*, 343 S.W.3d at 844. Attorney's fees are recoverable under the Fulchers' pleaded breach of implied warranties (habitability and good and workmanlike construction) cause of action, and thus were a "recognized remedy" for a cause of action considered at arbitration. *See* TEX. PROP. CODE ANN. § 27.004(g); TEX. CIV. PRAC. & REM. CODE ANN. § 38.001–.006. We overrule this sub-issue.

### 2. Expert Fees and Arbitration Fees

Taylor Morrison also objects to the trial court's adoption of the arbitrator's award of $32,968.86 in expert fees. In the arbitration award, the arbitrator explained:

> Texas law provides for the recovery of attorneys' fees in contract actions. However, unlike attorneys' fees, the arbitrator is aware of no other Texas statutory or common law that provides for an award of expert fees in this instance. Moreover, neither the FAA, the TAA, nor the applicable AAA rules expressly discuss such fees. However, unlike the issue of attorneys' fees, in their Post-Arbitration Hearing Brief, Respondents [d]o not expressly object to the award of expert fees. As such, expert fees will be awarded.

On this matter, we disagree with the arbitrator's conclusion and the trial court's subsequent adoption of this award. Under the Purchase Agreement, the arbitrator was only authorized to "provide all recognized remedies available in law or in equity for any cause of action that is the basis of the arbitration." In strict contrast to attorney's fees, which are recoverable under some of the Fulchers' alleged causes of action and not limited by § 27.004, the Fulchers do not cite to, and we have not found any, cause of action or equitable principle that allows a party to recover expert witness fees.[4]  *See Myer,*

---

[4] Regarding Taylor Morrison's alleged failure to object to this award, we do not know if Taylor Morrison objected because the arbitrator's full record is not before us. We note, however, that Taylor Morrison objected to this award before the trial court entered judgment, and thus conclude that this issue is preserved. *See* TEX. R. APP. P. 33.1.

13

232 S.W.3d at 413.

We hold the same with respect to the arbitrator's award of "arbitration fees paid by claimants," the Fulchers, as it has no basis in law. *See id.* Accordingly, the arbitrator exceeded the scope of his authority when he ordered that Taylor Morrison pay the Fulchers' arbitration fees. *See Nafta Traders, Inc.*, 339 S.W.3d at 88 (holding that an arbitrator does not have authority to apply a "remedy not expressly provided for under existing state or federal law").

We conclude that the trial court erred when it confirmed the arbitrator's expert fees and arbitration expenses award. *See Bernhard*, 423 S.W.3d at 534; *Amoco D.T. Co.*, 343 S.W.3d at 844. We sustain this sub-issue.

## C. Conclusion

We sustain the trial court's award of attorney's fees and reverse the award of expert fees and arbitration expenses to the Fulchers.

## III. POST-JUDGMENT INTEREST

By its second issue, Taylor Morrison argues the trial court erred when it awarded "[p]ost-judgment interest on any conditional awards that vest subsequent to entry of this judgment at the rate of five percent (5%) per annum." We agree.

"An award of conditional appellate attorney's fees to a party is essentially an award of fees that have not yet been incurred and that the party is not entitled to recover unless and until the appeal is resolved in that party's favor." *Ventling v. Johnson*, 466 S.W.3d 143, 156 (Tex. 2015). "Accordingly, we hold that an award for conditional appellate attorney's fees accrues postjudgment interest from the date the award is made final by

14

the appropriate appellate court's judgment." *Id.* Here, the trial court erred when it ordered that post-judgment interest on conditional attorney's fees should accrue as of the date of *its* judgment. Under *Ventling*, post-judgment interest on conditional appellate attorney's fees does not accrue until the date of the appellate court's judgment. *See id.*

We note, however, that guiding law only allows for total recovery of the conditional appellate fees if the decision has been "resolved in that party's favor." *Id.* Here, the Fulchers were only partially successful in their claims, as we sustained their award of attorney's fees but reversed their award of expert and arbitration fees. The Texas Supreme Court has held that "[a]t the point when [conditional appellate attorney] fees are awarded by the trial court, any appeal is still hypothetical." *Yowell v. Granite Op. Co.*, 620 S.W.3d 335, 355 (Tex. 2020). "There is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Id.*; *see Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–03 (Tex. 2019). We thus observe that because

> [t]he determination of an award of attorney's fees is a severable claim . . . we therefore reverse the award of attorney's fees for appeal to this court and remand to the trial court for a determination of the reasonable amount of appellate attorney's fees to be awarded to appellee in view of the fact that appellant was partially successful in this appeal.

*Goldman v. Alkek*, 850 S.W.2d 568, 578–79 (Tex. App.—Corpus Christi–Edinburg 1993, no writ); *see Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 188 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (remanding appellate attorney's fees to the trial court for segregation of fees for successful claims, or to demonstrate why segregation

15

is not required); *Pickett v. Keene*, 47 S.W.3d 67, 78 (Tex. App.—Corpus Christi–Edinburg 2001, pet. dism'd) ("An appellee is not entitled to an award of appellate attorney's fees for that portion of fees attributable to an unsuccessful defense of the case").

We sustain this issue.

## VI. CONCLUSION

We affirm the award of attorney's fees. We reverse the award for expert fees ($32,968.86) and arbitration fees ($24,327.19), and the post-judgment interest on any conditional awards subsequent to entry of the trial court's judgment. We remand to the trial court the issue of conditional appellate attorney's fees for a determination of the reasonable amount to be awarded to appellee given that appellant was partially successful in this appeal. The post-judgment interest on the conditional appellate attorney's fees should accrue as of the date of this court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed on the
4th day of August, 2022.

16