ACCEPTED
13-15-00207-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/30/2015 9:44:07 AM
Dorian E. Ramirez
CLERK

No. 13-15-00207-CV

_____

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/30/2015 9:44:07 AM
DORIAN E. RAMIREZ
Clerk

_____

**DOROTHY S. NESMITH, M.D., P.A.**

**Appellant**

**v.**

**VALLEY BAPTIST MEDICAL CENTER
n/k/a VB HARLINGEN HOLDINGS and
VHS HARLINGEN HOSPITAL COMPANY, LLC**

**Appellees**

_____

**On Appeal from Cameron County Court at Law Number 1
Arturo McDonald, Judge Presiding**

_____

**APPELLANT'S BRIEF**

_____

Chad M. Ruback
State Bar No. 90001244
chad@appeal.pro
The Ruback Law Firm
8117 Preston Road
Suite 300
Dallas, Texas 75225
(214) 522-4243
(214) 522-2191 fax

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant**

Dorothy S. Nesmith, M.D., P.A.

**Appellant's Trial Counsel**

David Casso
108 N. Jackson Road
Suite 2
Edinburg, Texas 78541

David Kithcart
222 E. Van Buren Street
Suite 101
Harlingen, Texas 78551

**Appellant's Appellate Counsel**

Chad M. Ruback
8117 Preston Road
Suite 300
Dallas, Texas 75225

**Appellees**

Valley Baptist Medical Center n/k/a
VB Harlingen Holdings and
VHS Harlingen Hospital Company, LLC

**Appellees' Trial and Appellate Counsel**

Blaine A. Holbrook
Nikki K. Elgie
10101 Reunion Place
Suite 900
San Antonio, Texas  78216

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

ISSUE ON APPEAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   I.      A summary judgment is reviewed *de novo*, so no deference should be given to the trial court's decision to grant summary judgment. . . . . 12

   II.     If a court is unable to give effect to all provisions in a contract—as with the contract at issue here—the contract is ambiguous, and summary judgment is inappropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   III.    The federal regulations which were the basis for the contract are further justification for the contract at issue here being ambiguous. . . . . . . 16

   IV.     Also favoring Dr. Nesmith is the well-established principle that a contract must be construed against the drafter. . . . . . . . . . . . . . . . . . 19

   V.      Conclusion: Valley Baptist was not entitled to traditional summary judgment or no-evidence summary judgment. . . . . . . . . . . . . . . . . . 19

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

APPENDIX A:     the order granting summary judgment  [CR vol. 5 pp. 273-274]

APPENDIX B:     the contract at issue  [CR vol. 1 pp. 381-403]

# INDEX OF AUTHORITIES

*Coker v. Coker*,
     650 S.W.2d 391 (Tex. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Columbia Gas Transp. Corp. v. New Ulm Gas, Ltd.*,
     940 S.W.2d 587 (Tex. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Henkel v. Norman*,
     441 S.W.3d 249 (Tex. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Innovate Tech. Solutions, L.P. v. Youngsoft, Inc.*,
     418 S.W.3d 148 (Tex. App.—Dallas 2013, no pet.). . . . . . . . . . . . . . . . . 14

*J.M. Davidson, Inc. v. Webster*,
     128 S.W.3d 223 (Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Killeen v. Lighthouse Elec. Contractors, L.P.*,
     248 S.W.3d 343 (Tex. App.—San Antonio 2007, pet. denied). . . . . . . . . 14

*Lewis v. Davis*,
     199 S.W.2d 146 (Tex. 1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Progressive County Mut. Ins. Co. v. Kelley*,
     284 S.W.3d 805 (Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Quick v. City of Austin*,
     7 S.W.3d 109 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reilly v. Rangers Mgmt., Inc.*,
     727 S.W.2d 527 (Tex. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sage St. Associates v. Northdale Constr. Co.*,
     863 S.W.2d 438 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Seaview Hosp., Inc. v. Medicenters of Am., Inc.*,
     570 S.W.2d 35 (Tex. Civ. App.—Corpus Christi 1978, no writ). . . . . . . . 18

*Solis v. Evins*,
   951 S.W.2d 44 (Tex. App.—Corpus Christ 1997, no writ). . . . . . . . . . . . 19

*Temple-Eastex, Inc. v. Addison Bank*,
   672 S.W.2d 793 (Tex. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*White v. Moore*,
   760 S.W.2d 242 (Tex.1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

v

## STATEMENT OF THE CASE

This suit involved a dispute over a contract by which a hospital hired a physician to serve as its director of rehabilitation. [CR vol. 1 p. 142] The physician filed suit against the hospital entities, and the hospital entities moved for summary judgment on both traditional and no-evidence grounds. [CR vol. 1 pp. 141, 147, 160] The trial court granted summary judgment. [CR vol. 5 pp. 273-274]

## ISSUE ON APPEAL

The trial court committed reversible error in granting Valley Baptist's motion for summary judgment.

## STATEMENT OF FACTS

Pursuant to a merger, the interests of Appellee Valley Baptist Medical Center were assumed by Appellee VHS Harlingen Hospital Company LLC d/b/a Valley Baptist Medical Center. [CR vol. 1 pp. 141-142 n.1] In the trial court, for ease of reference, these two entities referred to themselves collectively as if they were one entity called "Valley Baptist." [CR vol. 1 pp. 141-142 n.1]

Federal regulations require an inpatient rehabilitation unit—such as Valley Baptist's—to have a director of rehabilitation who provides at least eighty hours per month of services in the unit. [CR vol. 1 pp. 141-142; CR vol. 3 p. 58][1] In fact, compliance with these federal regulations is a prerequisite for a hospital to bill Medicare and Medicaid for services provided. [CR vol. 3 p. 58] To ensure compliance with these federal regulations, Valley Baptist entered into a contract (effective May of 2009) with Appellant Dorothy S. Nesmith, M.D., P.A. to serve as

---

[1] Valley Baptist asserted "One of the services that Valley Baptist provides . . . is an inpatient rehabilitation unit. . . . Federal regulations require that such a unit have a director of rehabilitation who provides services to the rehabilitation unit and to the unit's patients . . . for at least eighty hours per month." [CR vol. 1 pp. 141-142]

1

its director of rehabilitation. [CR vol. 1 pp. 142, 394][2] In the trial court, for ease of reference, Valley Baptist referred to Appellant Dorothy S. Nesmith, M.D., P.A. as if this entity were synonymous with its sole member, a rehabilitation physician named Dorothy Nesmith.[3] [CR vol. 1 pp. 142, 143-144 n.2] In doing so, Valley Baptist used female pronouns and the name "Dr. Nesmith." [CR vol. 1 pp. 143-144 n.2] For the sake of consistency, this appellate brief will refer to the parties by using the same references as were used in the trial court.[4]

The contract provides that Valley Baptist would pay Dr. Nesmith $130 per hour (up to eighty hours per month). [CR vol. 1 p. 142] In light of the fact that Valley

---

[2] Valley Baptist asserted "To maintain compliance with those federal requirements . . . Valley Baptist entered into a Medical Director Agreement . . . with the Plaintiff." [CR vol. 1 p. 142]

Valley Baptist sometimes refers to this position as "director of rehabilitation" and sometimes as "medical director." [CR vol. 1 p. 142] Dr. Nesmith, as director of rehabilitation / medical director, reported to someone whose title is "program director." [CR vol. 3 pp. 33-34, 49, 58, 60, 64, 69, 71]

[3] To be clear, the physician named Dorothy Nesmith is the sole member of Appellant Dorothy S. Nesmith, M.D., P.A. [CR vol. 1 pp. 143-144 n.2]

[4] To be clear, the contract was not with the physician named Dorothy Nesmith, and the physician named Dorothy Nesmith was never a party to this case. [CR vol. 1 pp. 9, 142, 394] The contract was with the professional association Dorothy S. Nesmith, M.D., P.A. [CR vol. 1 pp. 142, 394] Both the physician and the professional association are being referred to herein as "Dr. Nesmith" for the purposes of (1) being consistent with the parties' summary judgment briefing in the trial court and (2) aiding in the readability of this brief.

Baptist entered into the contract for the purpose of satisfying the federal requirement of a director of rehabilitation working at least eighty hour per month, not surprisingly, the contract expressly states that there would be a "Minimum Number of Hours 80 hours per month." [CR vol. 1 p. 395] And, likely to keep Valley Baptist's costs to an absolute minimum, the contract also expressly states that there would be a "Maximum Number of Hours 80 hours per month." [CR vol. 1 p. 395]

The contract provides that Dr. Nesmith was to submit a monthly form detailing how much time she spent on each day of the preceding month on each of twenty-six specified administrative services. [CR vol. 1 pp. 142-143, 396-399][5] Even for months where Dr. Nesmith may have recorded less than eighty hours on the twenty-six specified administrative services, it is undisputed that she was working as the medical director on the rehabilitation unit eighty hours per month or more during each

_____

[5] Valley Baptist asserted: "Plaintiff was required to submit a form, called a 'Summary Report' . . . that detailed the daily time spent for the preceding month on each of the twenty-six enumerated services." [CR vol. 1 p. 143] The twenty-six specified administrative services are listed in Appendix B to the contract. [CR vol. 1 pp. 396-398]

of those months.[6] [CR vol. 2 pp. 12-13][7] However, for months when the total hours allocatable to the twenty-six specified administrative services was less than eighty hours, Valley Baptist paid Dr. Nesmith only for the number of hours allocatable to the twenty-six specified administrative services (i.e., paying her for less than eighty hours). [CR vol. 1 p. 144]

Valley Baptist indicated that it took the position that Dr. Nesmith was supposed to perform other administrative services (in addition to the twenty-six specified administrative services) for Valley Baptist's rehabilitation unit, but that Valley

---

[6] It is also undisputed that, throughout Dr. Nesmith's tenure as director of rehabilitation, she performed all of the services necessary to keep the rehabilitation unit in full compliance with federal regulations. [CR vol. 1 p. 429]

[7] Jennifer Bartnesky-Smith is an attorney who was Valley Baptist's "hospital compliance officer" and was designated by Valley Baptist as its corporate representative for this litigation. [CR vol. 2 pp. 7-8] When asked in her deposition about Dr. Nesmith, Ms. Bartnesky-Smith testified: "I don't think that we're disputing that she's performed time under this contract that meets the [federal] requirements" (i.e., at least 80 hours per month). [CR vol. 2 p. 12]

Moreover, Ms. Bartnesky-Smith acknowledged that Dr. Nesmith fulfilled all of "the duties as articulated by the contract." [CR vol. 2 p. 70] As indicated above, one of these duties under the contract would be a "Minimum Number of Hours 80 hours per month." [CR vol. 1 p. 395]

Additionally, Dr. Nesmith's affidavit indicated that there was always at least "80 hours a month of service provided" to Valley Baptist. [CR vol. 3 p. 70] In fact, Dr. Nesmith regularly worked ten hours per day at the hospital, eating lunch and dinner at her desk, and then spent an additional one to two hours working from home. [CR vol. 3 p. 60]

Baptist would simply refuse to pay for those other services which she performed as medical director. [CR vol. 2 p. 13][8] Consistent with that position, Valley Baptist provided Dr. Nesmith with timekeeping forms which only had spaces for her to record hours allocatable to the twenty-six specified administrative services. [CR vol. 1 pp. 214-215, 428; CR vol. 3 pp. 12, 46, 60-74][9] These forms provided no blank lines for Dr. Nesmith to record the other time she spent performing medical director tasks other than the twenty-six specified administrative services. [CR vol. 1 pp. 134,

[8] Jennifer Bartnesky-Smith is an attorney who was Valley Baptist's "hospital compliance officer" and was designated by Valley Baptist as its corporate representative for this litigation. [CR vol. 2 pp. 7-8] Ms. Bartnesky-Smith was asked in her deposition about Dr. Nesmith: "She was to do administrative work on the unit without compensation from Valley Baptist?" Ms. Bartnesky-Smith candidly replied: "That's correct." [CR vol. 2 p. 13] Ms. Bartnesky-Smith emphasized that the work performed by Dr. Nesmith "would need to tie somehow to one of those [twenty-six] articulated duties" for Dr. Nesmith to be paid by Valley Baptist. [CR vol. 2 p. 13] However, the record does not reflect that Dr. Nesmith ever agreed to perform other administrative services (in addition to the twenty-six specified administrative services) for Valley Baptist without compensation. To the contrary, Dr. Nesmith testified in her deposition "I never agreed to do any of those hours for free." [CR vol. 3 p. 29]

[9] Sometime during the month of September of 2012, Valley Baptist provided Dr. Nesmith with new timekeeping forms that allowed her to record her time spent on all tasks—rather than merely her time spent on the twenty-six specified administrative services. [CR vol. 1 p. 428; CR vol. 2 p. 14; CR vol. 3 pp. 18, 74] Dr. Nesmith has no complaints about payments made by Valley Baptist for her work from that time forward. [CR vol. 1 p. 428; CR vol. 3 pp. 19, 74] Rather, Dr. Nesmith sought breach of contract damages only from the commencement of the contract in May of 2009 up until the timekeeping form was changed in September of 2012. [CR vol. 1 pp. 395, 428]

5

214-215, 428; CR vol. 3 pp. 12, 46, 60-74] And there were certainly other duties Dr. Nesmith had to perform. [CR vol. 3 p. 58][10] Dr. Nesmith repeatedly raised this issue with Valley Baptist. [CR vol. 2 pp. 19, 23] She even asked whether she could add other tasks to the timekeeping form or submit an addendum to the form, but the answer was "No." [CR vol. 3 p. 32] The record does not indicate why Valley Baptist would not permit Dr. Nesmith to other tasks to the timekeeping form or submit an addendum to the form.[11] This is especially notable in light of the fact that, during the pendency of the exact same contract with Dr. Nesmith, Valley Baptist later reversed

---

[10] In her affidavit, Dr. Nesmith stated that "the list of duties on the director timesheet was not all inclusive" of the duties she had to perform. [CR vol. 3 p. 58] Valley Baptist's corporate representative Ms. Bartnesky-Smith acknowledged that Valley Baptist did expect Dr. Nesmith to perform duties in addition to the twenty-six duties listed on the timekeeping forms. Specifically, Ms. Bartnesky-Smith was asked: "She was to do administrative work on the unit without compensation from Valley Baptist?" Ms. Bartnesky-Smith candidly replied: "That's correct." [CR vol. 2 p. 13]

It appears that Valley Baptist has taken the position that it does not have to pay Dr. Nesmith for the eighty hours specified in the contract, even though it is undisputed that Dr. Nesmith worked at least eighty hours as medical director every month. In the trial court, Dr. Nesmith characterized Valley Baptist's position as not being in good faith. [CR 96]

[11] The timekeeping form is not the only curious form which was utilized by Valley Baptist. Valley Baptist also used a form which specified "maximum payable/expected = 80 Hours". [CR vol. 5 p. 69] It is notable that Valley Baptist's form referenced the "Maximum Number of Hours 80 hours per month" provided in the contract but wholly ignored the "Minimum Number of Hours 80 hours per month" language provided on the exact same page of the contract. [CR vol. 1 p. 395]

6

its position and began allowing Dr. Nesmith to record all of her time—rather than merely her time spent on the twenty-six specified administrative services—beginning sometime during the month of September of 2012. [CR vol. 1 p. 428; CR vol. 2 p. 14; CR vol. 3 pp. 18, 74] The record does not reflect why Valley Baptist apparently interpreted the contract one way from the commencement of the contract in May of 2009 until September of 2012 (only paying Dr. Nesmith for time spent on the twenty-six specified enumerated services), then apparently changed its interpretation of the contract in September of 2012 (at which time Valley Baptist began paying Dr. Nesmith for all of her time spent up to the eighty-hour maximum), and now apparently changed its interpretation of the contract once again (once again taking the position that it should only pay Dr. Nesmith for time spent on the twenty-six specified enumerated services).

Ultimately, Dr. Nesmith filed a breach of contract suit against Valley Baptist. [CR vol. 1 p. 95] Dr. Nesmith alleged that Valley Baptist breached the contract by failing to pay her approximately $129,000 owed to her under the contract. [CR vol. 1 p. 79; vol. 3 p. 58][12]

---

[12] In her petition, Dr. Nesmith stated that she sustained "[d]irect economic loss under the Agreement in the amount of $129,415." [CR vol. 1 p. 99] In her affidavit, Dr. Nesmith stated that she "was underpaid $129,000." [CR vol. 3 p. 58]

Valley Baptist filed a motion for summary judgment. [CR vol. 1 p. 142] In its motion, Valley Baptist sought (1) traditional summary judgment, claiming that Valley Baptist established as a matter of law that it did not breach the contract and (2) no-evidence summary judgment, claiming that there is no evidence that Valley Baptist breached the contract. [CR vol. 1 pp. 147, 162][13] Although the parties disagreed about the amount that Valley Baptist owed to Dr. Nesmith,[14] the parties do not dispute the amount that which was actually paid by Valley Baptist to Dr. Nesmith. [CR vol. 1 pp. 57-58, 425] Valley Baptist even provided summary judgment evidence (copies of the checks by which it paid Dr. Nesmith) of the amounts it paid to Dr. Nesmith. [CR vol. 1 pp. 147, 212-364] Rather, Valley Baptist's argument revolves around Valley Baptist's interpretation of the contract. In fact, Valley Baptist's motion for summary judgment devotes 17 pages to arguing Valley Baptist's interpretation of the contract. [CR vol. 1 pp. 142-145, 147-159]

---

[13] Valley Baptist's motion also sought summary judgment as to several tort causes of action pleaded by Dr. Nesmith. [CR vol. 1 pp. 165-177] However, Dr. Nesmith is not seeking reversal of the summary judgment as to her tort causes of action.

[14] Dr. Nesmith argued that the payments made by Valley Baptist did not constitute the full amount owed to her pursuant to the contract (a/k/a the "Medical Director Agreement") and Valley Baptist argued to the contrary. [CR vol. 1 pp. 57-58, 142, 425]

8

Valley Baptist's argument as to breach of contract attempts to justify how Valley Baptist's interpretation of the contract is plausible despite the "Minimum Number of Hours" provision in the contract. First, Valley Baptist repeatedly suggests that the "Minimum Number of Hours" provision in the contract should be disregarded because it was merely in "the definition section" of the contract. [CR vol. 1 pp. 144-145, 148, 159] However, as Valley Baptist candidly acknowledges, the "Maximum Number of Hours" provision—upon which Valley Baptist heavily relies for its interpretation of the contract—is also in the definition section of the contract. [CR vol. 1 p. 151] ("The definition section, in turn, defines 'maximum number of hours' as '80 hours per month.' ")

Second, Valley Baptist claims that the "Minimum Number of Hours" provision should be disregarded because it is merely a "drafting error." [CR vol. 1 p. 159] However, Valley Baptist does not cite to any affidavit, deposition testimony, or other evidence in the summary judgment record to support the assertion that inclusion of this provision is a "drafting error."

Third, Valley Baptist suggests that giving effect to the "Minimum Number of Hours" provision would "render . . . meaningless" a provision in the contract which "unambiguously provides that Plaintiff would only be paid for substantiated time spent on one of the twenty-six enumerated services." [CR vol. 1 p. 145] Yet, Valley

9

Baptist's motion for summary judgment does not cite to any provision in the contract which allegedly provides this. [CR vol. 1 pp. 141-178] And nowhere in the contract does it expressly state "that Plaintiff would only be paid for substantiated time spent on one of the twenty-six enumerated services." [CR vol. 1 pp. 381-403]

Moreover, as noted above, Valley Baptist's motion suggests that it would be inappropriate to give effect to a provision in the contract relied upon by Dr. Nesmith (the minimum hours provision) if doing so would render meaningless another provision (the supposed provision that Dr. Nesmith would only be paid for work performing one of the twenty-six specified services). [CR vol. 1 p. 145] However, notably, Valley Baptist's motion does not explain how it could be appropriate to give effect to a provision relied upon by Valley Baptist (the supposed provision that Dr. Nesmith would only be paid for work performing one of the twenty-six specified services) when doing would render meaningless the minimum hour provision. [CR vol. 1 pp. 141-178]

## SUMMARY OF THE ARGUMENT

A summary judgment is reviewed *de novo*, so no deference should be given to the trial court's decision to grant summary judgment. If a court is unable to give effect to all provisions in a contract—as with the contract at issue here—the contract is ambiguous, and summary judgment is inappropriate. The federal regulations which were the basis for the contract are further justification for the contract at issue here being ambiguous. Also favoring Dr. Nesmith is the well-established principle that a contract must be construed against the drafter. In conclusion, Valley Baptist was not entitled to traditional summary judgment or no-evidence summary judgment.

# ARGUMENT

**I. A summary judgment is reviewed *de novo*, so no deference should be given to the trial court's decision to grant summary judgment.**

When a trial court grants a defendant's motion for summary judgment—as occurred in this case—the appellate court uses a *de novo* standard of review. *See Henkel v. Norman*, 441 S.W.3d 249, 250 (Tex. 2014). And, in using a *de novo* standard of review, the appellate court gives no deference to the trial court's decision. *See Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). Instead, the appellate court (1) examines the record in the light most favorable to the plaintiff; (2) indulges every reasonable inference against the defendant; and (3) resolves any doubts against the defendant. *See Henkel v. Norman*, 441 S.W.3d 249, 250 (Tex. 2014).

**II. If a court is unable to give effect to all provisions in a contract—as with the contract at issue here—the contract is ambiguous, and summary judgment is inappropriate.**

There is a provision in the contract providing: "Minimum Number of Hours 80 hours per month." [CR vol. 1 p. 395] In its motion for summary judgment, Valley Baptist repeatedly suggests that this provision should simply be disregarded. [CR vol. 1 pp. 144-145, 148, 159] In fact, in its motion for summary judgment, Valley Baptist (1) claims that the provision "is mere surplus" and (2) urges the trial court to "strike down the inclusion of that [provision] as a drafting error." [CR vol. 1 p. 159]

That would be wholly inconsistent with Texas Supreme Court precedent.

Specifically, the Texas Supreme Court has held that, in reviewing a contract, a court

must attempt to "give effect to all provisions of the contact so that none will be

rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.

2003).[15]  If the court is unable to harmonize and give effect to all provisions in the

contract—such as the "Minimum Number of Hours" provision in the contract at issue

---

[15]  Valley Baptist repeatedly suggests that the "Minimum Number of Hours" provision in the contract should be disregarded because it is merely in "the definition section" of the contract.  [CR vol. 1 pp. 144-145, 148, 159]  However, when the Texas Supreme Court held that a court must attempt to "give effect to all provisions of the contact so that none will be rendered meaningless," the Supreme Court did not carve out an exception to this rule for provisions which are in the definition section of a contract.  Moreover, as Valley Baptist candidly acknowledges, the "Maximum Number of Hours" provision—upon which Valley Baptist heavily relies for its own interpretation of the contract—is also in the definition section of the contract.  [CR vol. 1 p. 151]  ("The definition section, in turn, defines 'maximum number of hours' as '80 hours per month.' ")

Additionally, when the Texas Supreme Court held that a court must attempt to "give effect to all provisions of the contract so that none will be rendered meaningless," the Supreme Court did not carve out an exception to this rule for a provision alleged to be a "drafting error."  Moreover, Valley Baptist does not cite to any affidavit, deposition testimony, or other evidence in the summary judgment record to support the assertion that inclusion of the "Minimum Number of Hours" provision in the contract was a "drafting error."

13

here—the contract is ambiguous.[16] *See Innovate Tech. Solutions, L.P. v. Youngsoft, Inc.*, 418 S.W.3d 148, 151 (Tex. App.—Dallas 2013, no pet.); *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 349 (Tex. App.—San Antonio 2007, pet. denied); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). When a contract is ambiguous, interpretation of the contract is a fact issue. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Consequently, when a contract is ambiguous, "the granting of a motion for summary judgment is improper

---

[16] It is appropriate for a court to consider whether a contract is ambiguous even if the parties did not argue ambiguity. *See Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808-09 (Tex. 2009) (reversing summary judgment due to there being an ambiguity in the contract even though neither party had argued the contract was ambiguous); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003) (The dissent "implies that, because the parties do not contend the contract is ambiguous, we may not hold that it is. This is contrary to Texas law."); *Sage St. Associates v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993) (holding that a contract is ambiguous and noting that a "court may conclude that a contract is ambiguous even in the absence of pleading by either party"); *White v. Moore*, 760 S.W.2d 242, 243 (Tex.1988) (reversing summary judgment due to there being an ambiguity in the document even though both parties had argued that, as a matter of law, there was no ambiguity); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (reversing summary judgment due to there being an ambiguity in the contract even though both parties had moved for summary judgment based on the contract being unambiguous).

In this case, while Dr. Nesmith argued in the trial court that the contract was unambiguous (with an interpretation favoring her rather than favoring Valley Baptist), she also argued in the alternative that the contract was ambiguous and that Valley Baptist's motion for summary judgment be denied based on the contract being ambiguous. [CR vol. 1 p. 435]

because the interpretation of the instrument is a question for the jury." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

Valley Baptist suggests that giving effect to the "Minimum Number of Hours" provision would "render . . . meaningless" a provision in the contract which "provides that Plaintiff would only be paid for substantiated time spent on one of the twenty-six enumerated services." [CR vol. 1 p. 145] Even if there were such provision in the contract,[17] pursuant to the Texas Supreme Court case law cited above, a contract is ambiguous if it is not possible to give effect to every provision in the contract. That would, of course, include contractual provisions favorable to Valley Baptist (such as the supposed provision that Dr. Nesmith would only be paid for work performing one of the twenty-six specified services) and also contractual provisions favorable to Dr. Nesmith (such as the minimum hours provision).

---

[17] Valley Baptist's motion for summary judgment does not cite to any provision in the contract which allegedly provides—as Valley Baptist claims—"that Plaintiff would only be paid for substantiated time spent on one of the twenty-six enumerated services." [CR vol. 1 pp. 141-178] And nowhere in the contract does it expressly state "that Plaintiff would only be paid for substantiated time spent on one of the twenty-six enumerated services." [CR vol. 1 pp. 381-403] Of course, as the drafter of the contract, [CR vol. 2 p. 50] Valley Baptist could certainly have included such a provision in the contract. But, for whatever reason, Valley Baptist did not include such a provision when it drafted the contract.

**III.    The federal regulations which were the basis for the contract are further justification for the contract at issue here being ambiguous.**

The circumstances under which a contract was entered can also be used to support holding that the contract is ambiguous. *See Columbia Gas Transp. Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). And the circumstances under which this contract was entered support a holding that the contract is ambiguous—not a summary judgment in favor of Valley Baptist. Specifically, Valley Baptist acknowledges that federal regulations require an inpatient rehabilitation unit—such as Valley Baptist's—to have a director of rehabilitation who works at least eighty hours per month in the unit. [CR vol. 1 pp. 141-142][18] Valley Baptist acknowledges

---

[18] Without a director of rehabilitation working at least eighty hours per month in the unit, Valley Baptist would have jeopardized its entitlement to be paid under the federal government's Medicare and Medicaid programs. [CR vol. 3 p. 58] Specifically, compliance with the federal regulations (including the eighty-hour-per-month requirement) is a prerequisite for a hospital to bill Medicare and Medicaid for services provided. [CR vol. 3 p. 58] And Valley Baptist is required to document that it has satisfied the eighty hours per month requirement. [CR vol. 3 p. 60] Because the contract with Dr. Nesmith has a "Minimum Number of Hours 80 hours per month" provision, Valley Baptist could rely on the contract as documentation that it had a director of rehabilitation working at least eighty hours per month. Without that provision in the contract, Valley Baptist would appear to have no documentation to support having a director of rehabilitation working at least eighty hours per month. Specifically, Valley Baptist could not rely on the timekeeping form filled out by Dr. Nesmith each month because, as discussed above, that form indicates only the time Dr. Nesmith spent on twenty-six specified administrative services—sometimes less than eighty hours—rather than indicating all of the time she spent working in the unit.

16

entering into the contract at issue with Dr. Nesmith for the purpose of satisfying this requirement. [CR vol. 1 p. 142]

While Valley Baptist notes that the federal regulations permit the medical director's eighty-hour monthly minimum to be satisfied by both administrative tasks and patient care, [CR vol. 1 pp. 40-41][19] the contract does not provide for Dr. Nesmith to provide care to Valley Baptist patients, and the summary judgment record does not reflect that Dr. Nesmith was ever hired by Valley Baptist to provide any patient care. To the contrary, Valley Baptist acknowledged that to the extent Dr. Nesmith was doing work to care for Valley Baptist patients, Valley Baptist did not pay her for that work. [CR vol. 2 p. 13][20] As such, Valley Baptist's position—that the contract is not ambiguous and summary judgment in favor of Valley Baptist is appropriate because the "Minimum Number of Hours 80 hours per month" language in the contract can

---

[19] Valley Baptist asserted: "Federal regulations required that such a unit have a director of rehabilitation who provides services to the unit and the units patients, in any combination of patient services and administration, for at least twenty hours per week." [CR vol. 1 pp. 141-142] Similarly, Dr. Nesmith stated in her affidavit: "The 80 hours per CMS [federal regulations] can be any combination of administrative and patient care duties." [CR vol. 3 p. 58] (emphasis in original)

[20] Jennifer Bartnesky-Smith is an attorney who was Valley Baptist's "hospital compliance officer" and was designated by Valley Baptist as its corporate representative for this litigation. [CR vol. 2 pp. 7-8] Ms. Bartnesky-Smith was asked in her deposition about Dr. Nesmith: "So she was to do clinical work [patient care] on the unit without compensation?" Ms. Bartnesky-Smith candidly replied: "That's right." [CR vol. 2 p. 13]

simply be ignored—flies in the face of the circumstances under which the contract was entered.

In fact, if summary judgment were appropriate in this case, that summary judgment would need to be in favor of Dr. Nesmith rather than in favor of Valley Baptist. Specifically, the Texas Supreme Court has held "When two constructions of a contract are possible, preference will be given to that which does not result in violation of law." *Lewis v. Davis*, 199 S.W.2d 146, 149 (Tex. 1947); *see Seaview Hosp., Inc. v. Medicenters of Am., Inc.*, 570 S.W.2d 35, 39 (Tex. Civ. App.—Corpus Christi 1978, no writ). And, in this case, Valley Baptist's interpretation of the contract (that the "Minimum Number of Hours 80 hours per month" language in the contract should simply be ignored) would conflict with the federal regulations that require Dr. Nesmith to work in Valley Baptist's rehabilitation unit a minimum of eighty hours per month.[21] On the other hand, Dr. Nesmith's interpretation of the contract (giving effect to the "Minimum Number of Hours 80 hours per month" language in the contract) would be consistent with the federal regulations.

---

[21] Of course, Valley Baptist is not free to re-write the federal regulations. By definition, federal regulations define a party's responsibilities as a matter of federal law.

**IV.     Also favoring Dr. Nesmith is the well-established principle that a contract must be construed against the drafter.**

There is another reason that, if summary judgment were appropriate in this case, that summary judgment would need to be in favor of Dr. Nesmith rather than in favor of Valley Baptist. Specifically, the contract was drafted by Valley Baptist. [CR vol. 2 p. 50][22] And, under Texas law, a contract should be "construed most strictly against its author." *Temple-Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984); *see Solis v. Evins*, 951 S.W.2d 44, 50 (Tex. App.—Corpus Christ 1997, no writ) ("In this case, as in other cases under Texas law, the contract must be construed most strictly against its author.").

**V.     Conclusion: Valley Baptist was not entitled to traditional summary judgment or no-evidence summary judgment.**

In its motion, Valley Baptist sought (1) traditional summary judgment, claiming that Valley Baptist established as a matter of law that it did not breach the contract and (2) no-evidence summary judgment, claiming that there is no evidence that Valley Baptist breached the contract. However, Valley Baptist's entitlement to summary judgment (both traditional and no-evidence) turns on interpretation of the contract. Specifically, the parties do not dispute the amount that which was actually

---

[22] Matt Wolthoff, who was Valley Baptist's vice president of operations, testified at his deposition that "our obligation, again, is to produce the agreement and give it to the physician for her review." [CR vol. 2 pp. 44, 50]

paid by Valley Baptist to Dr. Nesmith (although the parties do dispute whether this was the full amount owed to Dr. Nesmith pursuant to the contract). In fact, Valley Baptist even provides summary judgment evidence (copies of the checks by which it paid Dr. Nesmith) of the amounts it paid to Dr. Nesmith. [CR vol. 1 pp. 147, 212-364]

Because Valley Baptist has not established its interpretation of the contract as a matter of law, it is not entitled to traditional summary judgment as to whether it breached the contract. Specifically, if the "Minimum Number of Hours" provision in the contract were given effect, the undisputed amount which Valley Baptist paid to Dr. Nesmith would be less than was required by the contract.

Similarly, because Valley Baptist has not established its interpretation of the contract as a matter of law, it is not entitled to no-evidence summary judgment as to whether it breached the contract. Specifically, if the "Minimum Number of Hours" provision in the contract were given effect, Valley Baptist's own evidence of what it paid to Dr. Nesmith would be some evidence of breach (as this was less than what would be required by the contract).

**PRAYER**

Dr. Nesmith respectfully prays that this Court reverse the trial court's summary judgment and remand for a trial as to her breach of contract cause of action. Dr. Nesmith also prays for her costs and for all other relief to which she may be entitled.

Respectfully submitted,

/s/ Chad M. Ruback
Chad M. Ruback
State Bar No. 90001244
chad@appeal.pro
The Ruback Law Firm
8117 Preston Road
Suite 300
Dallas, Texas 75225
(214) 522-4243
(214) 522-2191 fax

**CERTIFICATE OF COMPLIANCE**

I certify that, according to my word processor's word-count function, in the sections of this brief covered by TRAP 9.4(i)(1), there are 5,340 words.

/s/ Chad M. Ruback
Chad M. Ruback

## CERTIFICATE OF SERVICE

I certify that, on September 30, 2015, I served a copy of this Appellant's Brief to the following counsel for Appellees:

Blaine A. Holbrook
Nikki K. Elgie
Evans, Rowe & Holbrook, P.C.
10101 Reunion Place
Suite 900
San Antonio, Texas  78216

/s/ Chad M. Ruback
Chad M. Ruback

CAUSE NO. 2013-CCL-00785

DOROTHY S. NESMITH, M.D., P.A. §
PLAINTIFF §
§
v. §
§
VALLEY BAPTIST MEDICAL CENTER §
AND VHS HARLINGEN HOSPITAL §
COMPANY, LLC §
DEFENDANTS §

IN THE COUNTY COURT, PEREZ
CAMERON CO. TY CLERK
By Juan Ochoa Deputy

AT LAW NO. 1

CAMERON COUNTY, TEXAS

## ORDER GRANTING
## DEFENDANTS, VALLEY BAPTIST MEDICAL CENTER AND
## VHS HARLINGEN HOSPITAL COMPANY, LLC'S
## SECOND AMENDED HYBRID MOTION FOR SUMMARY JUDGMENT

On the 21st day of January, 2015, came on to be heard Defendants, Valley Baptist Medical Center and VHS Harlingen Hospital Company, LLC's Second Amended Hybrid Motion for Summary Judgment. The Court, having considered the Motion, Plaintiff's Response, Defendants' Reply, pleadings timely filed, the summary judgment evidence, and argument of counsel, hereby **GRANTS the Motion for Summary Judgment** on each and every cause of action plead by Plaintiff in its _____ Amended Petition.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff take nothing against Defendants in this lawsuit and that each and every of Plaintiff's claims and causes of action against Defendants are hereby dismissed with prejudice.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants are prevailing parties under the contract at issue in this litigation and are therefore entitled to recover their reasonable attorney's fees and costs incurred in successfully defending this lawsuit. Defendants request for attorney's fees is therefore GRANTED. A hearing

Each to Party to pay its own.

Order on Defendants' Second Amended Hybrid Motion for Summary Judgment – Page 1

273

to determine the amount of reasonable attorney's fees and costs to be awarded to

Defendants will be held on _____.

Signed this date: _____**MAR 2 3 2015**_____

_____
HONORABLE JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

FLORES & CASSO
108 N. Jackson Road, Suite 2
Edinburg, Texas 78541
Phone: (956) 383-5000
Fax: (956) 383-5007
Email: cassodavid@gmail.com

By: _____
DAVID CASSO
State Bar No. 03980250

ROUNTREE & KITHCART
222 E. Van Buren, Suite 101
Harlingen, Texas 78550
Phone: (956) 440-1234
Fax: (956) 440-1235
Email: kithcart@bizrgv.rr.com

By: _____
DAVID KITHCART
State Bar No. 11541300

**ATTORNEYS FOR PLAINTIFF**

EVANS, ROWE & HOLBROOK, P.C.
10101 Reunion Place, Suite 900
San Antonio, Texas 78216
Phone: (210) 340-6555
Fax: (210) 340-6664
Email: bholbrook@evans-rowe.com
Email: nelgie@evans-rowe.com

By: _____
BLAINE A. HOLBROOK
State Bar No. 24008446
NICKI K. ELGIE
State Bar No. 24069670

**ATTORNEYS FOR DEFENDANTS**

Copies sent to all
parties of record

3/24/15
**Date**          **Deputy**

# VALLEY BAPTIST MEDICAL CENTER

## MEDICAL DIRECTOR AGREEMENT

## WITH PHYSICIAN

### *INDEPENDENT CONTRACTOR*


EXHIBIT

## PREAMBLE

Valley Baptist Medical Center is a multi-purpose community health service institution organized to perform health, religious, charitable, scientific, literary and educational programs in the Rio Grande Valley. In order to ensure coordinated, high quality patient care the Hospital (defined below) management has determined that the need exists for certain medico-administrative services, as outlined in Appendix A attached hereto and incorporated herein by reference, to be provided by a physician with specialized training and experience for the Program (defined below). As a result, this Agreement is being entered into with the physician identified herein.

## MEDICAL DIRECTOR AGREEMENT

This Medical Director Agreement (the "Agreement") is entered into effective as of the "Effective Date," as defined on Appendix A, by and between "Hospital" and "Physician," each as defined on Appendix A. Hospital and Physician are referred to at times in this Agreement as a "Party" individually, and as the "Parties" collectively.

## RECITALS:

A. Hospital operates an acute care general hospital located in the location set forth on Appendix A and requires certain administrative services for the "Program," as defined on Appendix A. Hospital requires the services of a physician with specialized training and experience to provide medico-administrative direction for the Program. Physician is licensed to practice medicine in the State of Texas, possesses specialized training and experience in the "Specialty," as defined on Appendix A, and is qualified to provide such services; and

B. Hospital desires to engage Physician as Medical Director of the Program, and Physician desires to serve in that capacity to provide medico-administrative services under the terms and conditions of this Agreement.

## AGREEMENT:

NOW, THEREFORE, in consideration of the premises, and the mutual covenants and conditions contained herein, Hospital and Physician agree as follows:

Engagement.

Hospital hereby appoints and engages Physician to serve as Medical Director of the Program (the "Medical Director") and Physician hereby accepts such appointment and engagement, all subject to the terms and conditions of this Agreement.

Title.

Physician's title shall be described on Appendix A.



## Duties of Physician.

II.1  Services.  Physician agrees to perform the Services (defined below) pursuant to the terms and conditions of this Agreement, and to serve Hospital faithfully and diligently, according to the best of his/her abilities.  In the role of Medical Director, Physician will have the following major areas of responsibility: (a) assisting Hospital in delivering the services provided in the Program in an efficient manner in compliance with applicable legal and accreditation requirements; (b) assisting members of the medical staff of Hospital (the "Medical Staff") with privileges in the Program in developing clinical protocols and care paths in disciplines practiced in the Program; (c) assisting Hospital in the development, implementation and carrying out of performance improvement and quality assessment efforts for the Program; and (d) monitoring the clinical and business operations of the Program; and in carrying out such responsibilities, Physician shall perform the services set forth on Appendix B attached hereto and incorporated herein by reference (collectively, the "Services").  The Services are administrative in nature and do not constitute the practice of medicine.

II.2  Hours.  Physician agrees to devote up to the maximum number of hours per month as described on Appendix A to the performance of the Services, with the exact dates and times to be coordinated by Physician and Hospital in accordance with the needs of Hospital.  Physician agrees to provide services in excess of this maximum as may be required by Hospital for no additional compensation.

II.3  Reports and Records.  Physician agrees to provide Hospital with a written summary report of the Services rendered hereunder.  The written report shall be submitted to Hospital on a monthly basis in the form set forth in Appendix C to this Agreement (the "Summary Report").  The Summary Report shall contain the information requested by Hospital in order to comply with applicable federal and state laws, regulations and rules or substantiation of the performance of the Services.  The Summary Report shall be provided to Hospital within thirty (30) calendar days of the end of each month.  No Director Fee will be paid by Hospital to Physician before Hospital receives the Summary Report from Physician for that month.  Physician will maintain and retain records substantiating the nature and performance of the Services for a period of at least forty-eight (48) months following the month in which the Services were performed.

II.4  Reporting Relationships.  Physician agrees to report to the Chief Executive Officer of Hospital (the "CEO") with respect to all matters.  Physician also shall maintain effective liaison with the medical directors of all clinical departments in Hospital for clinical and professional matters related to, as appropriate, clinical integration, quality improvement, patient care, research and teaching.

II.5  Education Programs.  Physician agrees to participate in the educational and training programs conducted by Hospital, and shall perform such other teaching and training functions within Hospital related to services provided in the Program as the CEO reasonably requests.  Physician shall monitor developments and improvements in the Specialty, and will work with Hospital in the implementation of developing technologies and methods of diagnosis and treatment relating to that specialty.

75213800.3

2

II.6  Quality Assurance.  Physician agrees to cooperate with and participate in the quality assessment and performance improvement activities of Hospital as required by applicable bylaws, rules and regulations of the Medical Staff, and policies and procedures of Hospital, as are in effect from time to time, by law or rules or regulations under or applicable to the Medicare or Texas Medicaid (Texas Medical Assistance) programs, by the standards and accreditation survey reports of the Joint Commission, and/or by other regulatory licensing or accrediting agencies of Hospital.

II.7  Ethics and Professional Standards.  Physician agrees to comply with the ethical and professional standards of the American Medical Association, the Joint Commission, the Centers for Medicare and Medicaid Services ("CMS") the Texas Department of State Health Services ("TDSHS"), the Medical Ethics Committee at Hospital and other professional and/or governing bodies identified by the CEO from time to time.

Representations and Warranties of Physician.

II.8  Licensure; Certification and Enforcement Action.  Physician represents and warrants that he/she is, and during the term of this Agreement shall remain (a) duly licensed and in good standing under the laws of the State of Texas to engage in the unrestricted practice of medicine, (b) registered to administer and prescribe controlled substances, and (c) certified by the "Board" as defined on Appendix A.  Physician represents and warrants that his/her license to practice medicine and registration to prescribe and administer medications and controlled substances in the State of Texas or in any other jurisdiction has never been denied, suspended, revoked, terminated, voluntarily relinquished under threat of or subject to disciplinary action, probated, or restricted in any way.  Physician further represents and warrants that he/she has not been subject to disciplinary or corrective action by any hospital or licensing agency.  Upon request, Physician shall provide to Hospital third-party documentation to evidence the accuracy of the foregoing representations and warranties and, upon request, shall authorize (in writing if requested) Hospital to obtain verification directly from third parties.

II.9  Medical Staff Membership.  Physician represents and warrants that he/she has or will obtain prior to the Effective Date, and during the term of this Agreement shall maintain, active Medical Staff membership and appropriate clinical privileges in good standing.

II.10  Continuing Medical Education.  Physician represents and warrants that he/she will take all actions necessary to maintain such training and experience as may be required by the Texas Medical Board and as necessary to abide by the requirements of Physician's medical board specialty, including, without limitation, attendance, at professional conventions, post-graduate seminars, continuing medical education seminars and conferences and functions of professional societies ("CME Activities").  CME Activities are at the sole cost and expense of Physician unless such expenses are accounted for in the budget of the Program and/or approved in advance by the CEO.

75213800.3

3

384

II.11 Compliance with Law and Accreditation Standards. Physician represents and warrants that he/she satisfies, and during the term of this Agreement will continue to satisfy the standards and requirements applicable to a medical director of the Program established by Hospital and for maintaining the Program in accordance with the standards of the Joint Commission, the Accreditation Council for Graduate Medical Education ("ACGME"), if applicable, the TDSHS, and the CMS, and other applicable governing bodies identified by Hospital.

II.12 Compliance with Hospital Policies. Physician agrees to comply with the applicable provisions of the bylaws, rules and regulations of the Medical Staff, and the policies and procedures of Hospital, as are in effect from time to time. Physician shall show respect to and work cooperatively with the personnel of Hospital, and in particular, those persons working in or on behalf of the Program.

II.13 Fraud and Abuse Related Sanctions. Physician represents and warrants that he/she has not been, and during the term of this of Agreement shall not be: (a) sanctioned within the meaning of the Social Security Act Section 1128A or any amendments thereof; (b) convicted of violating the federal law known as the "Stark law," federal false claims acts, federal Medicare and Medicaid anti-kickback statute, EMTALA, federal civil monetary penalties statute, and equivalent Texas laws; or (c) debarred, excluded or suspended from participation in any federal or state health care program.

II.14 Disclosure. Physician agrees to notify Hospital within three (3) days in the event any representation or warranty by Physician set forth in this Agreement shall no longer be true, correct or complete.

II.15 Employees. Physician agrees that during the term of this Agreement, and for a period of twelve months after this Agreement terminates, the Physician shall not, directly or indirectly, hire or contract with any employee or former employee of Hospital or any of its affiliates, without the prior written consent of Hospital. Physician agrees that any such hiring of any such employee shall be a breach of this restrictive covenant and shall entitle Hospital to injunctive relief without necessity of bond, in addition to any other rights to which Hospital is entitled. For purposes of this Section 4.9, the term "former employee" shall mean any person employed by Hospital, or any of its affiliates, during the term of this Agreement who leaves Hospital's employ during the twelve months after this Agreement terminates for the purpose of the being hired by or contracted with Physician. The covenants contained in this Section 4.9 shall, to the extent provided herein, survive the termination of this Agreement.

Conflicts of Interest.

Physician agrees to complete, execute and deliver to Hospital the Valley Baptist Health System form of Conflicts of Interest Statement identifying all conflicts of interest Physician or any of his/her immediate family members has with Hospital or any of the other entities affiliated with Valley Baptist Health System set forth on Appendix F or otherwise identified for Physician during the Term (the "Affiliates"). Physician agrees to comply with the Valley Baptist Health System Conflicts of Interest Policy.

75213800.3

4

385

### Incurring Financial Obligation; Expenses.

Physician may not incur any financial obligation on behalf of Hospital without the prior written approval of the CEO. Physician will be responsible for all expenses incurred by him/her in providing Services under this Agreement, unless such expenses are accounted for in the budget of the Program and/or approved in advance by the CEO.

### Private Medical Practice.

Nothing contained herein shall prevent Physician from establishing and maintaining a private medical practice. Physician's medical practice is separate and apart from Physician's duties as Medical Director. Physician shall conduct his/her private medical practice, however, in a manner that permits fulfillment of his/her responsibilities under this Agreement.

### Other Valley Baptist Health System Relationships.

Physician represents and warrants to Hospital that Physician has no financial relationship (whether oral or written) with Hospital, Valley Baptist Health System or any Affiliate, other than this Agreement or as set forth on Appendix D attached hereto and incorporated herein by reference.

### Insurance and Indemnification.

II.16 Professional Liability Insurance. In the event Physician is engaged in a private medical practice, Physician, at his/her own cost and expense, shall maintain in full force and effect during the Term of this Agreement, professional liability insurance issued by an insurer acceptable to Hospital covering Physician against all claims arising out of the performance of services constituting the practice of medicine ("Malpractice Insurance"). Malpractice Insurance shall be in amounts of coverage no less than that required for membership on the Medical Staff. If the Malpractice Insurance coverage is on a claims-made basis and Physician ceases to maintain this professional liability coverage or changes insurance carriers, Physician shall obtain from an insurance carrier acceptable to Hospital an unlimited reporting endorsement or extended coverage policy ("tail") in the amount of the prior policy covering all acts or occurrences during the Term of this Agreement as to which claims may still be asserted. On or before the Effective Date, and thereafter upon request, Physician shall promptly deliver to Hospital certificates of insurance evidencing such coverage.

II.17 Directors and Officers Insurance. Hospital will provide Director's and Officer's and general liability insurance coverage for Physician for the Services provided by Physician pursuant to this Agreement in such amounts as may be deemed necessary or desirable by Hospital. Said insurance shall not cover any professional services provided by Physician.

II.18 Indemnification. Hospital shall indemnify and hold Physician harmless from any loss Physician might suffer or any liability Physician might have to any person arising as a result of the Services provided by Physician pursuant to this Agreement that do not arise as a result of an act or omission of Physician; provided, however, nothing herein

386

shall be construed as providing indemnification for any malpractice action or other proceeding arising out of, or in any way connected with, the professional services by Physician. Hospital will provide Physician with legal representation as necessary, except to the extent that to do so would be contrary to the Texas Rules of Professional Responsibility. Hospital shall retain the right to approve any settlement or compromise of any loss or liability for which Physician invokes Hospital's indemnification as provided hereunder.

## Ownership of/Access to Books and Records.

II.19 Government Access to Books and Records. Physician agrees to comply with all applicable federal and Texas laws governing the maintenance of documentation to verify the cost of Services rendered under this Agreement. Until the expiration of four (4) years after the furnishing of Services pursuant to this Agreement, Physician shall make available, upon written request of the Secretary of the Department of Health and Human Services or the Comptroller General of the United States, or any of their duly authorized representatives, this Agreement, and books, documents, and records of Physician that are necessary to certify the nature and extent of such costs.

II.20 Notice to Hospital. If Physician receives a request or demand to disclose any books, documents or records relevant to this Agreement for the purpose of an audit or investigation by any party, Physician agrees to notify Hospital in writing of the nature and scope of such request or demand within two (2) business days after receipt of such request or demand. Physician shall make available to Hospital, upon written request of Hospital, all such books, documents or records. Physician will cooperate with Hospital in any action brought by or on behalf of Hospital in opposition to such request or demand.

II.21 Ownership of Records. All Program records are and shall remain the property of Hospital.

## Financial Arrangements.

II.22 Director Fee. In exchange for the performance by Physician of the Services, and conditioned upon Physician's proper completion and timely submission of the Summary Report, Hospital agrees to pay to Physician compensation as set forth in Appendix E (the "Director Fee"). Hospital and Physician acknowledge and agree that the compensation provided by Hospital to Physician for the Services performed by Physician is intended to be fair market value for such services, and that none of the compensation is intended to induce or is provided in consideration for Physician ordering or recommending or arranging for the ordering of any Hospital services. The Director Fee will be paid in accordance with Hospital's standard payroll policies for an independent contractor and in accordance with any applicable law or governmental regulation. Physician shall not bill any patients or third party payors for Services provided pursuant to this Agreement.

## Term and Termination.

II.23 Term of Agreement. The original term of this Agreement shall be for a period of one (1) year commencing on the Effective Date (the "Original Term"), unless terminated

387

earlier in accordance with the provisions of this Agreement. This Agreement shall be automatically extended for successive one (1) year terms (each, a "Renewal Term") under the same terms and conditions unless the Agreement is otherwise terminated pursuant to this Section 12 or either Hospital or Physician elects not to so renew by giving the other Party at least one hundred eighty (180) days' written notice prior to the end of any term. The Original Term and the Renewal Term are called the "Term" herein. If this Agreement is terminated during the Original Term with or without cause, the Parties agree that they will not enter into the same or substantially the same arrangement during the Original Term of this Agreement.

II.24 Termination by Mutual Consent. This Agreement may be terminated at any time by mutual written agreement of Hospital and Physician.

II.25 Optional Termination. This Agreement may be terminated by either of Hospital or Physician without the requirement of stating any cause therefore by giving the other Party at least one hundred eighty (180) days' prior written notice.

II.26 Termination for Breach. Either Hospital or Physician may terminate this Agreement immediately for breach of any material term or condition of this Agreement by the other Party ("Breaching Party") if the breach is not corrected to the satisfaction of the noticing Party within ten (10) days after written notice thereof is received by the Breaching Party. The notice of breach under this section shall specify with reasonable particularity the nature and extent of the material breach for which complaint has been made.

II.27 Termination by Hospital. Hospital may terminate this Agreement, effective immediately upon notice to Physician, in the event of:

II.27.1 any termination, suspension, withdrawal under threat of disciplinary action, probation, limitation or reduction (other than a wholly voluntary action by Physician) in Physician's medical staff membership or privileges at Hospital or any other hospital or health care facility;

II.27.2 any termination, suspension (whether or not stayed), probation, limitation, revocation or lapse of Physician's (a) license to practice medicine in the State of Texas, (b) state or federal authorization to administer or prescribe controlled substances;

II.27.3 (a) any imposition of sanctions against Physician within the meaning of Social Security Act section 11228A or any amendments thereof; (b) indictment of Physician for violating a Health Law; or (c) debarment, exclusion or suspension of Physician from participation in any federal or state health care program;

II.27.4 charging or indictment of Physician of any crime involving fraud, moral turpitude or immoral conduct;

II.27.5 the death of Physician; or

752138003

7

388

II.27.6     the disability of Physician such that, with or without accommodation, Physician cannot properly perform the Services.

II.28   Matters Relating to Medical Staff Membership and Due Process. Medical Staff membership is a condition to the performance of Services under this Agreement. However, this Agreement is not, and shall not be construed as, any form of guarantee or assurance by Hospital that Physician will obtain or retain Medical Staff membership or clinical privileges; those matters are governed solely by the bylaws, rules and regulations of the Medical Staff as are in effect from time to time. The nonrenewal or termination of this Agreement shall not affect the Medical Staff membership or clinical privileges of Physician at Hospital, which status shall be separately governed by the bylaws of Hospital and of the Medical Staff, although the event causing the termination under this Agreement may also be grounds for action under the bylaws of Hospital or the Medical Staff bylaws. Any due process or other requirements of Hospital or its Medical Staff bylaws, rules or regulations shall not apply to the termination of this Agreement.

II.29   Post-Termination Obligations. The termination of this Agreement shall not relieve either Party of any obligation pursuant to this Agreement which arose on or before the date of termination, and the following sections in this Agreement shall survive and continue in full force and effect after the expiration of the Term or the termination of this Agreement: Sections 9, 10, 12.6, 12.7, 13, 14, 15, 17.1, 17.3, 17.6, 17.9, 17.11, 17.12, 17.13, and 17.14.

Legal Compliance.

If there is a change in any law, regulation or rule, state or federal, which adversely affects this Agreement or the activities of either Party under this Agreement, or any change in the judicial or administrative interpretation of any such law, regulation or rule or if any of the provisions of this Agreement are found to be in violation of the laws existing at the time of such determination, and either Party reasonably believes in good faith that the change, interpretation or determination will have a substantial adverse effect on that Party's business operations or its rights or obligations under this Agreement, then the Party may, upon written notice, require the other Party to enter into good faith negotiations to renegotiate the terms of this Agreement and to take any action necessary to maintain compliance with such laws, rules or regulations. If the Parties are unable to reach an agreement concerning the modification of this Agreement within the earlier of forty-five (45) days after the date of the notice seeking renegotiation or the effective date of the change in law, either Party may immediately terminate this Agreement by written notice to the other Party.

Confidentiality and Privacy of Protected Health Information.

II.30   Confidentiality. Physician acknowledges that in connection with this Agreement and the Services provided by Physician under this Agreement, Physician may be acquiring and making use of certain confidential information of Hospital which includes, but is not limited to, management reports, financial statements, internal memoranda, reports, patient information, and other materials or records of a proprietary nature ("Confidential Information"). Therefore, in order to protect the Confidential Information,

389

Physician shall not use such Confidential Information except in connection with the performance of Physician's duties pursuant to this Agreement, or divulge the Confidential Information to any third party, unless Hospital consents in writing to such use or divulgence or disclosure is required by law. Physician shall comply with the applicable federal and state laws and regulations governing the confidentiality of all patient medical records and peer review information. In the event Physician receives a request or demand from a third party for the disclosure of Confidential Information, Physician shall promptly (within two (2) business days after receipt of such request or demand) provide written notice to Hospital of such request or demand, including a copy of any written document of such request or demand. Upon termination of this Agreement, Physician shall not take or retain, without prior written authorization from Hospital, any patient records, other patient clinical data or information, patient list, papers, fee schedules, files, or other documents or copies thereof or other Confidential Information of any kind belonging to Hospital pertaining to patients, business, sales, financial condition, or products of Hospital that are in Physician's possession by reason of this Agreement. Without limiting other possible remedies for the breach of this covenant, the Parties agree that injunctive or other equitable relief shall be available to enforce this covenant, such relief to be without the necessity of posting a bond, cash or otherwise.

II.31  Compliance with HIPAA. Physician shall comply with all requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its regulations, as amended from time to time, as set forth on Appendix G, attached hereto.

Relationship of the Parties.

In the performance of the Services under this Agreement, as well as in the private practice of medicine by Physician, it is mutually understood and agreed that Physician is, and at all times shall be, an independent contractor and not an agent or employee of Hospital. Hospital shall neither have nor exercise any control or direction over the medical judgment of Physician, nor over the methods or manner by which Physician engages in the practice of medicine or carries out the Services. Nothing herein is intended or shall be construed as giving that degree of control or direction on the part of Hospital that creates an employer-employee, joint venture, or agency relationship between Hospital and Physician with respect to the Services. Hospital will not withhold from any amounts paid to Physician for Services provided pursuant to this Agreement any sum for income tax, unemployment insurance, social security or any other withholding pursuant to any law or requirement of any governmental body not applicable to independent contractor relationships. Physician shall submit reports and returns, make any necessary payments, and maintain any records required by any local state or federal governmental agency (such as estimated tax payments and payment of self-employment taxes). The Parties agree to take any and all action as may be reasonably requested by either of them to inform the public, patients of Hospital, and others utilizing the Program, of the independent contractor nature of their relationship.

**Notices.**

Notices or communications to be given under this Agreement shall be provided to the appropriate Party in writing either by personal delivery, commercial delivery service, or registered or certified mail, postage prepaid, to the address set forth on the signature page or at such other addresses and to such other persons as either Party may from time to time designate by notice given as herein provided. Such notices or communications shall be deemed to have been given upon receipt if by personal delivery, three (3) business days after deposit in the United States mail if sent by registered or certified mail, postage prepaid, one (1) business day after delivery if by an overnight delivery service, or upon transmission confirmation if by telefacsimile. A "business day" is a day on which the United States Postal Service delivers mail in Harlingen, Texas.

**General Provisions.**

II.32   Entire Agreement; Representation; Construction. This Agreement, any amendments or addenda hereto, and any exhibits specifically mentioned herein constitute the entire agreement between the Parties regarding the subject matter hereof and supersede all prior or contemporaneous discussions, representations, correspondence, offer letters, memoranda and agreements, whether oral or written, pertaining thereto. By executing this Agreement, the Parties acknowledge that they have been represented by independent legal counsel, and have had the opportunity to review and consider its terms. The language of this Agreement shall be construed as a whole according to its fair and common meaning. The various titles of the Sections herein are used solely for convenience and shall not be used for interpretation or construing any word, clause, paragraph, or subparagraph of this Agreement.

II.33   Counterparts. This Agreement may be executed in multiple counterparts, and each counterpart shall be considered an original.

II.34   Further Acts. The Parties each agree to cooperate fully with each other to take such further action and execute such other documents or instruments as necessary or appropriate to implement this Agreement.

II.35   Amendments. This Agreement may be amended only by a written instrument signed by Hospital and Physician.

II.36   Assignment. Physician may not assign or delegate the rights, duties and obligations of Physician under this Agreement to any other person, group or professional association. Hospital may not assign or delegate the rights, duties or obligations of Hospital under this Agreement to any other person or entity without prior written consent of Physician; provided, however, that this Agreement may be assigned to any corporation or other entity succeeding to the business of Hospital in connection with the merger, consolidation or transfer of all or substantially all of the assets and business of Hospital or with a corporate reorganization involving Hospital. This Agreement may also be assigned to any subsidiary, Parent Corporation or other affiliate of Hospital that has responsibility for the operations of the Program.

391

II.37 No Third Party Beneficiaries. This Agreement shall be binding upon and inure to the benefit of the Parties, their successors and permitted assigns. Nothing in this Agreement is intended, nor shall be deemed, to confer any benefits on any third party, including, without limitation any patients of Hospital, nor shall such person or entity have any right to seek, enforce or recover any right or remedy with respect hereto.

II.38 Patient Complaints. The Parties agree to cooperate with each other in the resolution of any patient complaints arising out of the performance by Physician of the Services. Such patient complaints shall be resolved in accordance with the policies and procedures established by Hospital.

II.39 Representations and Warranties. Physician acknowledges that Hospital is relying on his/her representations and warranties contained in this Agreement in entering into this Agreement and the transactions contemplated hereby.

II.40 Severability. If any term or provision of this Agreement is to be held illegal, invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law; and in lieu of each such illegal, invalid or unenforceable provision the Parties shall use their best reasonable efforts to add as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be legal, valid, and enforceable in accordance with the provisions of Section 13.

II.41 Waiver. Waiver by either Party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any prior, concurrent or subsequent breach of the same or similar provision. None of the provisions of this Agreement shall be considered waived by either Party except when such waiver is given in writing.

II.42 Governing Law; Venue. This Agreement shall be construed and governed according to the laws of the State of Texas, without giving effect to its conflict of law provisions. The Parties expressly agree that this Agreement is executed and shall be performed in Cameron County, Texas and venue of all disputes, claims and lawsuits arising hereunder shall lie in Cameron County, Texas.

II.43 Remedies. The remedies provided to the Parties by this Agreement are not exclusive or exhaustive, but are cumulative of each other and in addition to any other remedies the Parties may have.

II.44 Attorney's Fees. If either Party brings an action against the other to enforce any condition or covenant of this Agreement, the prevailing Party, in addition to other relief awarded by a court or arbitrator, shall be entitled to recover from the other Party its court/arbitration costs and reasonable attorney's fees incurred in such action.

II.45 Confidentiality of Agreement. Physician shall keep the terms of this Agreement confidential and not disclose such terms to any third party other than his/her legal and

75213800.3

11

392

financial advisors, or otherwise as required by law, without the prior written consent of Hospital.

II.46 Corporate Practice of Medicine. Nothing contained herein is intended to (a) constitute the use of a medical license for the practice of medicine by anyone other than a licensed physician; (b) aid Hospital or any other corporation to practice medicine when in fact such corporation is not licensed to practice medicine; or (c) constitute or result in any other act or create any other arrangements in violation of the Texas Medical Practice Act (Tex. Occ. Code Chapter 51).

II.47 Compliance with Applicable Federal and State Law. The Parties enter into this Agreement with the intent of conducting their relationship in full compliance with applicable state, local, and federal law including the federal law commonly known as the Stark law, the Medicare and Medicaid Anti-Fraud and Abuse law, the Texas Health & Safety Code Anti-Patient Solicitation law, and Section 501(c)(3) of the Internal Revenue Code. Neither party will intentionally conduct itself under the terms of this Agreement in a manner to constitute a violation of such laws.

II.48 No Referral Obligation. Physician acknowledges and understands that this Agreement does not require, and shall not be construed to require (directly or indirectly, explicitly or implicitly), Physician's use of Hospital or any other facility or service related to Hospital, or the admission or referral of any patients treated by Physician to Hospital or other facilities related to Hospital. This Agreement does not prohibit Physician from obtaining membership on the medical staff of any other hospital or health care entity or from referring patients to or utilizing the services of any other hospital or health care entity.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the Effective Date.

HOSPITAL

VALLEY BAPTIST MEDICAL CENTER – HARLINGEN

By: _____

Name: James E. Eastham
Title: President & Chief Executive Officer
Notice Address: 2101 Pease St., Harlingen, TX 78550

PHYSICIAN

By: _____

Dorothy Nesmith, M.D., P.A.
Notice Address:
    P.O. BOX 532121, HARLINGEN TX 78553-2121

75213800.3

13

394

# APPENDIX A

## PHYSICIAN SPECIFIC INFORMATION

Hospital (page 1):                    Valley Baptist Medical Center – Harlingen

Location (page 1)                     Harlingen, Texas

Effective Date (page 1):             5/1/2009

Physician (page 1):                Dorothy Nesmith, M.D., P.A.

Program (page 1):                 Rehabilitation and Physical Medicine

Specialty (page 1):                Rehabilitation and Physical Medicine

Physician's Title (page 1):         Medical Director of Rehabilitation and Physical Medicine

Minimum Number of Hours        80 hours per month (20 per week/48 weeks)

Maximum Number of Hours (page 2):  80 hours per month

Board (page 3):                   American Board of Rehabilitation and Physical Medicine

Hourly Compensation             $130.00

Annual Maximum Compensation    $128,400

395

## APPENDIX B

### MEDICAL DIRECTOR RESPONSIBILITIES

### PROGRAM

Hospital Program includes operation of an Inpatient Rehabilitation Unit ("the Unit") and the operation of an Outpatient Rehabilitation Service ("the Service"). As used herein the term Rehabilitation Services Program ("the Program") shall refer to both the Unit and the Service. Medical Director shall be on-site at the Program providing administrative services for a minimum of twenty hours per week as required by Medicare regulations.

### I. Budget

1.  Assist in the development of an annual budget for the Program.

2.  Direct research activities in the Program, working with the CEO, and help develop financial support for such research efforts.

3.  Work with the Valley Baptist Health System Foundation to encourage gift giving for the Program, Hospital and other Affiliates.

### II. Unit Policy Development & Implementation

1.  Be knowledgeable of and provide consultation and input on development and implementation of operational policies and programs to comply with directives of the federal and state agencies that may govern the Program.

2.  Prepare reports to Hospital and evaluate reports by others to Hospital with respect to the Program and cooperate with the administrators of Hospital as necessary to carry out effectively and efficiently the obligations of the Medical Director in accordance with Section 3.3 of this Agreement.

3.  Assist Hospital in formulating and implementing policies and procedures for patient care delivery at Hospital, which include care paths and clinical protocols.

4.  Provide administrative direction relating to physical medicine and rehabilitation services provided in the Program, including the development of new and existing programs, services and policies for the Program.

### III. Education

1.  Assist Hospital in organizing and conducting medical education programs governing all aspects of Physical Medicine and Rehabilitation Program services for medical residents, fellows and the physicians with privileges to practice in the Program at Hospital, and/or Affiliates.

396

2. Upon request of Hospital, participate in and conduct continuing professional education and medical education activities offered by the Program, by Hospital and by Affiliates.

3. Participate in continuing professional education and medical education activities including journal article and book review to improve patient care and staff knowledge base.

4. Assist Hospital in training and educating Hospital personnel regarding Program procedures and techniques and use of equipment in the Program.

5. Assist Hospital, as requested by Hospital, in community education, public relations and marketing efforts regarding Physical Medicine and Rehabilitation services and Hospital.

IV. Meeting Attendance

1. Attend program leadership and performance improvement meetings as requested by Hospital.

2. Represent the Program on the Medical Staff committees of Hospital, and serve as liaison between Program and other Programs of Hospital.

V. Quality Care Assurance

1. Make recommendations to Hospital on space planning, capital equipment needs, and any other process improvement initiatives.

2. Lead team conferences with nurses, discharge planners and therapists.

3. Make recommendations to Hospital on recruitment, employment or other engagement of professional and administrative personnel who would perform patient care through the Program.

4. Participate in clinical system integration and business process redesign programs at Hospital and throughout the Valley Baptist Health System.

5. Work cooperatively with other members of the Medical Staff, Programs and Hospital administration in the strategic planning efforts for Program and Hospital.

6. Assist Hospital in maintaining accreditation by the Joint Commission on Accreditation of Healthcare Organizations, [CARF, ACGME] and any licensure, certification, qualification or registration for Hospital required pursuant to any federal or state law.

7. Lead admission review conferences with admissions coordinator and ensure CMS 13 compliance.

8. Coordinate discharge planning including medication reconciliation.

9. Supervise and coordinate clinical care of Program patients by other rehabilitation specialists, cross coverage physicians and consultants.

75213800.3

B-2



10. Manage dispute resolution between clinical providers, staff, patients, patients and families.

## VI. Utilization Review

1. Assist Hospital in formulating, implementing and monitoring policies and programs for quality assessment, performance improvement, utilization review, risk management programs and resources efficiency measures in Program.

## VII. Other Duties

1. Perform other duties and services as may from time to time be reasonably requested by the CEO of the Hospital.

75213800.3

B-3

# APPENDIX C

## SUMMARY REPORT

    The Summary Report (see sample below) will list the duties and responsibilities delineated in Appendix B of this Agreement, must indicate the month/year when Medical Director Services were rendered, and must be signed and dated by the Medical Director.



399

# APPENDIX D

## OTHER RELATIONSHIPS WITH VALLEY BAPTIST HEALTH SYSTEM

- Medical Staff privileges

400

# APPENDIX E

## COMPENSATION

In consideration for, and upon substantiation of, the performance of the Services, Physician will be paid in arrears on an hourly basis at the "Hourly Compensation" rate set forth on Appendix A, which amount shall in no event exceed the "Monthly Maximum Compensation" set forth on Appendix A. Physician shall keep a written record in the form attached hereto as Appendix B, meeting the requirements of this Agreement for the substantiation of Physician's time devoted to the performance of the Services.

401



# APPENDIX F

## CONFLICTS OF INTEREST

*(See attached.)*



# APPENDIX G

## PRIVACY OF PROTECTED HEALTH INFORMATION.

*(See attached BAA)*



403